CHARLES W. LASHER *v.* PEOPLE OF THE STATE OF ILLINOIS,

and

EDWARD C. REICHWALD *et al. v.* SAME.

*Opinion filed December 18, 1899.*

1. LEGISLATURE—*legislature may form classes for purpose of police regulation.* In enacting laws for the purpose of police regulation the legislature may form classes, provided the classification rests upon a reasonable basis and does not arbitrarily discriminate between persons in substantially the same situation.

2. SAME—*legislature may enact law to regulate commission business.* The business of dealing in the small products of the farm on commission is of a nature which may be productive of great abuses, and the legislature may enact regulating laws applicable to cities of such size as in the legislative judgment would permit the existence and growth of such abuses.

3. CONSTITUTIONAL LAW—*Commission Merchants act of 1899 is not an arbitrary discrimination.* The Commission Merchants act of 1899 (Laws of 1899, p. 364,) is not invalid because it excepts from its operation those who deal in grain, live stock and dressed meat, since the latter are subject to other statutory regulations, and the action of the legislature in putting commission merchants dealing in the small products of the farm into a separate class rests upon a reasonable ground.

4. SAME—*section 22 of article 4 of constitution construed as to what is a franchise.* A franchise, within the meaning of section 22 of article 4 of the constitution, prohibiting the passage of any special law granting any special franchise to any corporation, association or individual, is a special privilege granted by the State which does not belong to citizens of the country, generally, by common right.

5. SAME—*power of appointment to public office is a franchise.* The power of appointment to public office is a franchise, since no private corporation, association or individual has such power as a matter of common right, but only by virtue of legislative grant.

6. SAME—*provisions of Commission Merchants act concerning board of inspectors are unconstitutional.* That portion of the Commission Merchants act of 1899 which creates a board of inspectors with power to grant licenses, and which requires commission merchants to obtain such licenses and imposes a penalty for failure to do so, is void, as in violation of section 22 of article 4 of the constitution, since the members of the board are State officers, the power of appointing whom is conferred by the act upon five private corporations specified therein.

7. SAME—*sections 1 and 2 of Commission Merchants act are separable from invalid portion.* The invalidity of the provisions of the Commission Merchants act of 1899 concerning the board of inspectors, their powers, rights and duties, does not affect sections 1 and 2 of the act, which are separable from the invalid provisions.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

DARROW, THOMAS & THOMPSON, for plaintiffs in error:

Section 8 of the Commission Merchants act of 1899, for a violation of which plaintiffs in error were found guilty, is void, because in contravention of section 2 of article 2 and section 22 of article 4 of the State constitution, and of the fourteenth amendment to the Federal constitution. *Millett* v. *People,* 117 Ill. 294; *Frorer* v. *People,* 141 id. 171; *Braceville Coal Co.* v. *People,* 146 id. 71; *Ritchie* v. *People,* 155 id. 98; *Eden* v. *People,* 161 id. 296; *Railway Co.* v. *Ellis,* 165 U. S. 150.

Section 3 of the act, which attempts to create a board of inspectors with power to grant licenses, is void, because repugnant to section 22 of article 4 and section 10 of article 5 of the constitution; and therefore the act, as a whole, is void, because that section is essential to the integrity of the act, and without it the legislative intention, as evidenced by the entire act, cannot be effectuated. *People* v. *Bunn,* 45 Ill. 397; *People* v. *Inglis,* 161 id. 256; *People* v. *Morgan,* 90 id. 558; *People* v. *Hoffman,* 116 id. 587; *State* v. *Kennon,* 7 Ohio St. 546.

EDWARD C. AKIN, Attorney General, (CHARLES S. DENEEN, State's Attorney, and W. M. McEWEN, of counsel,) for the People:

The State may, in any business or trade or classification of callings where such business or trade or classification is subject to abuses, pass proper laws in regulation, and in connection with that may exact a proper license fee to pay the expense of such regulation. *Jones* v. *People,*

14 Ill. 196; *Braun* v. *Chicago,* 110 id. 186; *Wiggins* v. *Chicago,* 68 id. 372; *Distilling Co.* v. *Chicago,* 112 id. 19; *Chicago* v. *Bartree,* 100 id. 57; *Kinsley* v. *Chicago,* 124 id. 359.

An act which applies to all of a class is not class legislation within the inhibition of the constitution, and the act in question does not discriminate in its section 6. *Hawthorn* v. *People,* 109 Ill. 302; *People* v. *Hoffman,* 116 id. 587; *People* v. *Hazelwood,* 116 id. 319; *Cummings* v. *Chicago,* 144 id. 563; *Trausch* v. *Cook County,* 147 id. 534.

The act does not purport to give the power of appointment to individuals to select the board of inspectors for general State purposes but is confined to cities having more than 50,000 population, and therefore is not subject to the provision of the constitution condemning appointments of officers for the State at large. *People* v. *Morgan,* 90 Ill. 558; *People* v. *Hoffman,* 116 id. 587; *Kilgour* v. *Drainage Comrs.* 111 id. 342; *Bunn* v. *People,* 45 id. 397.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiffs in error in these two cases were defendants in the criminal court of Cook county under indictments charging them with the violation of "An act to regulate the shipping, consignment and sale of produce, fruits, vegetables, butter, eggs, poultry or other products or property, and to license and regulate commission merchants and to create a board of inspectors and to prescribe its powers and duties," in force April 24, 1899. The indictment against Charles W. Lasher charged him with soliciting consignments of butter and eggs for sale on commission as a commission merchant without procuring a license from the board of inspectors of the State of Illinois to carry on said business. Edward C. Reichwald and William G. Reichwald were charged in the indictment against them with receiving on consignment for sale on commission, as commission merchants, certain green and deciduous fruits, consisting of grapes,

plums and peaches, without first procuring such license.
The defendants were tried before the court without a
jury, and they raised the question of the validity of the
statute providing for a board of inspectors and a license
to be issued by such board, both by motions to quash
the indictments and by propositions of law submitted to
the court. The charges in the indictments were proved
on the trials and were not disputed. The court held the
law valid, fined the defendants and entered judgments
against them.

The first section of the act in question provides for
making reports to consignors and remitting to them the
proceeds of sale, with itemized statements, and for keep-
ing records of transactions. The second section imposes
a penalty for violating any of the provisions of the act.
Sections 3 to 8 inclusive are as follows:

"Sec. 3. That a board of inspectors is hereby created,
to be composed of one member from each of the follow-
ing organizations: Illinois State Horticultural Society,
Illinois State Dairymen's Association, Illinois State Re-
tail Dealers' Association, Chicago Butter and Egg Board
and Chicago branch of National League of Commission
Merchants. In case any of the aforesaid organizations
are not incorporated under the laws of the State of Illi-
nois at the time of going into effect of this act, they shall
not be disqualified from furnishing said members if the
incorporation is completed on or before January 1, 1900.
The members of said board of inspectors shall be selected
from the membership of said organizations by the mem-
bers thereof at some regular or special meeting at which
there shall be a quorum, and shall serve for a period of
one year. In case of the failure or refusal of any such
organization to so elect a member of such board of in-
spectors, it shall be the duty of the remaining members
of said board to fill such vacancy by the selection of some
person representing the line of business the represen-
tative organization of which has failed or refused to so

elect.   Each member of said board shall receive as his compensation the sum of ten dollars ($10) for each session attended, and ten cents per mile additional when required to travel a distance of more than ten miles to attend such meeting.

"Sec. 4. Said board of inspectors shall organize by electing from their number a president, a vice-president and a treasurer, and may appoint a 'secretary, and, if needed, two inspectors, such secretary and inspectors to be compensated by said board.   It shall be the duty of the secretary to receive complaints regarding the disposition of the articles of country produce shipped on commission to licensed receivers, and instruct inspectors to investigate the same, and make a report to be submitted to said board at its next regular meeting.

"Sec. 5. Said board shall meet monthly on the second Wednesday of each month for the purpose of transacting such business as may come before them; and said board is hereby authorized to provide a room or place of meeting and for permanent headquarters in the city of Chicago at an annual rental of not more than seven hundred and fifty dollars ($750), said rent to be paid from the funds of said board.   A detailed statement of all expenditures of the board shall be made to the Governor each year.

"Sec. 6. Every person, firm or corporation in the State of Illinois, doing business in a city of more than fifty thousand population receiving on consignment for sale on commission butter, eggs, poultry, game, dressed calf, green and deciduous fruits, berries, and other commodities the product of the farm, with the exception of grains, live stock and dressed meats, shall first procure from the board a license to carry on said business, for which said party or parties shall pay into the State treasury the sum of twenty-five dollars ($25) annually, said license to be renewed annually.

"Sec. 7. The board shall have power to prescribe a system of books and accounts to be kept by licensed

commission receivers, and said inspectors and members of said board, or duly authorized agents of said board, shall have access to such books, accounts and memoranda upon demand, and have power to send for books and papers and examine under oath. Any refusal upon the part of said licensed dealers to exhibit such said books, accounts or memoranda, when called upon to do so by such legally constituted authorities, shall forfeit the license held, which shall not be re-issued inside of three months without unanimous consent of said board.

"Sec. 8. It shall be unlawful for any person, firm or corporation to receive or solicit consignments of such country produce as is mentioned in this act without first obtaining such license, and violators shall be fined not less than $50 nor more than $200, and it shall be the duty of the State's attorney of the county wherein prosecutions are brought to prosecute such violations, and the board may, at its discretion, employ such counsel as they may deem necessary for the prosecution of such violation."

The remainder of the act makes provision for the prosecution of offenses and the revocation of licenses by the board, requires the payment of a fee of one dollar by any person making complaint, which is to be turned over to the Treasurer of the State, and provides for the payment of expenses of the board out of the State treasury.

It is first argued that the statute is invalid as discriminating between commission merchants, because it excepts those who deal in grain, live stock and dressed meats. The claim is, that produce commission merchants constitute a class, and that the legislature must require a license from all or none. This objection to the law is not valid. The legislature have power to form classes for the purpose of police regulation, if they do not arbitrarily discriminate between persons in substantially the same situation. The discrimination must rest upon some reasonable ground of difference, but the classification in

this case is a natural one. The commission merchants dealing in the kinds of produce named in this act, which constitute the small products of the farm, are of a different class from those who transact business in the great markets for the sale of grain, live stock and dressed meats. The State laws for the inspection of grain provide for the protection of shippers in that market, and there is also State inspection of live stock and dressed meats. The law which classifies small commission merchants engaged in the produce commission business rests upon a reasonable ground as a basis for the classification. Such a business may afford great opportunities for swindling, and be productive of great abuses, and the legislature may properly enact a law applying to cities of such size as in the legislative judgment would permit the growth and existence of such abuses.

Another ground of objection made to the act is, that the provisions which create a board of inspectors with power to grant licenses, and which require commission merchants to procure such licenses and impose a penalty for the failure to do so, are void, as repugnant to section 22 of article 4 of the constitution, which prohibits the legislature from passing any law granting to any corporation, association or individual any special or exclusive privileges, immunity or franchise whatever. The provisions in question are special in their nature, and the act names five corporations upon which it confers the power to appoint a board of inspectors to be selected from the membership of such corporations. If the power to appoint such a board of inspectors constitutes a franchise, then there can be no doubt that the legislature had no power to confer such a franchise upon the corporations named in the act. A franchise has been often defined, so that the meaning of the term is well settled. Blackstone's definition is: "A royal privilege or branch of the king's prerogative subsisting in the hands of a subject." (2 Blackstone's Com. 21.) In this country it is a special

privilege granted by the State, which does not belong to citizens of the country generally by common right. This is the distinguishing feature of a franchise. A right which belongs to the government when conferred upon the citizen is a franchise. No one can exercise the right of eminent domain, or establish a highway or railway and charge tolls for the same, without a grant from the legislature. Such rights as inhere in the sovereign power can only be exercised by the individual or corporation by virtue of a grant from such sovereign power, and when the State grants such a right it is a franchise. (*Board of Trade* v. *People,* 91 Ill. 80; *People* v. *Holtz,* 92 id. 426.) In the former of these cases the distinction between a franchise and a privilege which belongs to the citizen of common right was pointed out, and in the latter case it was said: "If the constitutional convention and the General Assembly used the term according with its strict legal import, —and we must suppose they did,—then, in this country, it can only embrace corporations, ferries, bridges, wharfs and the like; and we may add the elective franchise, as it is granted by the constitution to a portion of the people to elect their officers." A franchise must be granted by the legislature, and a municipal body cannot confer a franchise. (*Chicago City Railway Co.* v. *People,* 73 Ill. 541; *Metropolitan City Railway Co.* v. *Chicago West Division Railway Co.* 87 id. 317.) Now, the power to appoint to office in a monarchy is a royal privilege or branch of the king's prerogative. It is an attribute of sovereignty, and does not belong to citizens generally, by common right. Blackstone includes this power among the prerogatives of the king, and says that offices are in his disposal as sovereign. (1 Blackstone's Com. 272.) The power to appoint to office is within the definition of Blackstone, which was adopted in the cases above referred to. In this State the people, in their sovereign capacity, through the constitution, conferred the elective franchise upon a portion of the citizens having certain qualifications, as was said in

*People* v. *Holtz, supra.* The General Assembly was prohibited from exercising the power of appointment, and as to certain other officers the following provision was made: "The Governor shall nominate, and by and with the advice and consent of the Senate, (a majority of all the Senators selected concurring, by yeas and nays,) appoint all officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise provided for; and no such officer shall be appointed or elected by the General Assembly." (Const. sec. 10, art. 5.) Appointment to office is a large part of the official power belonging to the Governor, under our constitution, as the chief executive. Under a somewhat similar prohibition against the exercise of the appointing power by the General Assembly, it was held in *State* v. *Kennon,* 7 Ohio St. 546, that the legislature had no power to confer upon three persons named by the legislature the power to appoint certain officers. No private corporation and no individual has the power of appointment to any office as a matter of common right, and cannot have any such power except by virtue of a legislative grant.

In *People* v. *Holtz, supra,* it was held that an office is not a franchise, and it is argued that consequently the power to appoint to office is not a franchise, privilege or immunity. It does not follow that because the office is not a franchise the power to appoint to it is not. The power of appointment to an office and the office itself are entirely distinct and of a different nature. A citizen may hold the title to an office and perform its functions, but the power to create the office and designate such functions and fill the office must rest in the government or some governmental agency.

But it is said that these inspectors are not officers of the State because they exercise their duties within the limits of cities of more than fifty thousand population, and that we have sustained laws investing officers of the

judicial department with the power to appoint local or
municipal officers.   These inspectors are authorized to
perform their duties throughout the State wherever there
is a city of more than fifty thousand population.   A law
applying to cities of such size is considered general,
operating throughout the State, because its provisions
will apply wherever there may be such a city.   These
officers are required to report to the Governor each year,
their license fees and fees for complaints are turned into
the State treasury, and the expenses are paid out of the
State treasury.   Our constitution defines an office as fol-
lows: "An office is a public position created by the con-
stitution or law, continuing during the pleasure of the
appointing power, or for a fixed time, with a successor
elected or appointed.   An employment is an agency, for
a temporary purpose, which ceases when that purpose is
accomplished." (Const. sec. 24, art. 5.)   These officers
serve for the period of one year, and are appointed an-
nually.   The board is a State board, and is so described
in each indictment.   The cases relied upon to sustain
this law relate to local and municipal officers, and do
not hold that the legislature may vest the power of ap-
pointment in private corporations.   The power in each
case was vested in a branch of the State government.
The statute passed upon in *People* v. *Morgan*, 90 Ill. 558,
authorized the judges of the circuit court of Cook county
to fill vacancies in the offices of South Park Commission-
ers, and the Election law which was sustained in *People*
v. *Hoffman*, 116 Ill. 587, provided that the judge of the
county court might appoint election commissioners.   The
question mainly discussed in those cases was whether
the power of appointment could be exercised by the ju-
dicial branch of the government, and in each case the
law providing for the appointment was adopted by a vote
of the municipality affected.   With reference to the ap-
pointment of South Park Commissioners it was said that
the power might, no doubt, be sustained on the ground

that its exercise was the act of an individual who was the incumbent of the office of judge; but that statement, if entirely accurate, should be taken with reference to a case where the people had adopted a law containing a provision for such an appointment. The case was decided and the law sustained on the ground that the legislature might authorize a judicial officer to exercise the power as to a local officer. We have not been referred to any case where the legislature has attempted to confer the power of appointment upon a private corporation. So far as appears, such a law is without precedent in this State. In *Bunn* v. *People*, 45 Ill. 397, it was held that the commissioners appointed under the act for the erection of a new State house were not officers but employees of the State, and in *Kilgour* v. *Drainage Comrs.* 111 Ill. 342, and *People* v. *Inglis*, 161 id. 256, it was held that the legislature might impose new duties upon officers already elected, and that the imposition of such new duties was not the appointment of an officer. They have no bearing on the question involved here.

The board of inspectors provided for by this act are general officers of the State, and it seems beyond question that the power to appoint them is a franchise, which the act in question attempts to grant to five corporations. The legislature was powerless to clothe these corporations with an attribute of sovereignty by granting to them this special privilege. The criminal court was wrong in holding the provisions in question to be valid.

We see no objection to the first and second sections of the act, which are separable from the invalid provisions.

The judgments are reversed.     *Judgment reversed.*