(Nos. 18165-18166-18167-18168.—Writs awarded.)

THE PEOPLE *ex rel.* Charles G. Nauert, Petitioner, *vs.* W. J.
SMITH, County Clerk of Adams County, Respondent.—
THE PEOPLE *ex rel.* John H. Gillan, Petitioner, *vs.* GIL-
BERT W. SKEETERS, County Clerk of Iroquois County,
Respondent.—THE PEOPLE *ex rel.* Waldemar R. Weber,
Petitioner, *vs.* R. C. ADAMS, County Clerk of St. Clair
County, Respondent.—THE PEOPLE *ex rel.* Ernest S.
Alden, Petitioner, *vs.* PAUL H. ELLIS, County Clerk of
Union County, Respondent.

*Opinion filed October 22, 1927.*

1. CONSTITUTIONAL LAW—*article 6 of constitution is source of
legislative authority respecting courts.* Article 6 of the constitu-
tion covers the whole judicial power of the people of the State
and is the source of all legislative authority respecting courts.

2. SAME—*act of June 30, 1925, fixing salaries of county judges,
is valid.* While the county board, by the general provision of sec-
tion 10 of article 10 of the constitution, has authority to fix the
compensation of all county officers for which the constitution makes
no other provision, the provision of section 32 of article 6, in re-
gard to the judiciary, that all officers "shall receive such compen-
sation as is or may be provided by law," is sufficient authority for
the act of June 30, 1925, fixing the salaries of county judges.

3. SAME—*provisions of the constitution should be construed to-
gether.* No one provision of the constitution is to be separated

from all the others and to be considered alone, but all the provisions bearing upon the particular subject are to be brought into view and to be so interpreted as to effectuate the great purposes of the instrument.

4. SAME—*special provision will be treated as exception to contrary general provision.* Where general and special provisions of the constitution are in conflict the special provisions should be given effect to the extent of their scope, leaving the general provisions to control in cases where the special provisions do not apply.

DUNCAN, J., dissenting.

ORIGINAL petition for *mandamus.*

BROWN, HAY & STEPHENS, (LOGAN HAY, R. ALLAN STEPHENS, and LEIGH M. KAGY, of counsel,) for petitioners.

J. LEROY ADAIR, State's Attorney of Adams county, MARK A. PENICK, and JOHN T. INGHRAM, JR., for respondents.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Pursuant to leave granted, the People of the State, on the relation of Charles G. Nauert, filed in this court an original petition for a writ of *mandamus* against W. J. Smith, county clerk of Adams county. The relator alleged in his petition that at the general election held on November 2, 1926, he was elected to the office of county judge of Adams county and that he duly qualified and is acting as such; that by section 1 of an act entitled, "An act fixing and providing for the payment of the salaries of county judges, and to repeal all acts in conflict therewith," approved June 30, 1925, the several county judges in the State thereafter elected are allowed the following annual salaries: In counties of less than 15,000 inhabitants, $1800; in counties of 15,000 and less than 25,000 inhabitants, $2500; in counties of not less than 25,000 and not more than 48,000

inhabitants, $3600; in counties containing not less than 48,000 and not more than 100,000 inhabitants, $5000; in counties containing not less than 100,000 and not more than 250,000 inhabitants, $6000; and in counties containing more than 250,000 inhabitants a sum equal to the salary of circuit judges in such counties; that section 2 provides that the population of all counties, for the purpose of fixing such salaries, shall be based upon the last Federal census immediately previous to the election of county and probate judges; and that by the third section of the act the salaries of such judges shall be paid out of the county treasury in monthly installments. The county commissioners or county board, as the case may be, are required to make provision for such payment, and the county clerk of each county at the end of every month shall draw a warrant for such salary in favor of the county judge on the county treasurer, whose duty it shall be to pay the warrant on presentation when properly endorsed. The petition further alleges that the population of Adams county, according to the last Federal census previous to the election of November 2, 1926, was 62,188; that the county board of Adams county appropriated $2500 for relator's salary for one year from December 1, 1926, and fixed his annual salary at that sum; that the county clerk has refused to issue a voucher for the relator's salary for the month of December, 1926, at the rate of $5000 per annum although the relator has demanded the voucher, and there was at the time of such demand and refusal sufficient money in the appropriate fund of the county treasury to pay the warrant; that the county clerks in a large number of the counties of the State refuse to recognize the act of June 30, 1925, and unless its constitutionality is determined by this court in an original proceeding for a writ of *mandamus* various county judges will be required to institute suits, many of which will result in judgments in their favor, which, if not reviewed, will not finally determine the question of the

validity of the act, and that if this court will pass upon the
constitutionality of the act in this proceeding the institution
of a large number of suits in different counties of the State
and delay in the administration of justice will be prevented.
The prayer of the petition is for a writ of *mandamus* com-
manding W. J. Smith, the county clerk of Adams county,
to issue a warrant upon the treasurer of that county, pay-
able to the order of the relator, for his salary as county
judge for the month of December, 1926, at the rate pre-
scribed by the statute. To this petition the respondent filed
a general demurrer.

Leave to file three other like petitions was also granted.
One of these petitions, on the relation of John H. Gillan
and against Gilbert W. Skeeters, county clerk of Iroquois
county, alleged that on November 2, 1926, the relator had
been elected to the office of county judge of Iroquois
county; that the population of that county by the last Fed-
eral census prior to his election was 34,841; that while the
act of June 30, 1925, provided that his annual salary should
be $3600, yet the county board fixed his salary at $2500
per annum and appropriated that sum therefor, and that
the county clerk refused to issue a voucher for the relator's
salary for the month of December, 1926, at the statutory
rate. Another of these petitions, on the relation of Walde-
mar R. Weber and against R. C. Adams, county clerk of
St. Clair county, alleged that on November 2, 1926, the
relator had been elected to the office of county judge of
St. Clair county; that the population of that county by the
last Federal census prior to his election was 136,520; that
while the act of June 30, 1925, provided that his annual
salary should be $6000 and the county board had appropri-
ated that sum therefor, yet the same board fixed his salary
at $4000 per annum, and that the county clerk refused to
issue a voucher for the relator's salary for the month of
December, 1926, at the rate prescribed by the statute. The
last of these petitions, on the relation of Ernest S. Alden

and against Paul H. Ellis, county clerk of Union county, alleged that on November 2, 1926, the relator had been elected to the office of county judge of Union county; that the population of that county by the last Federal census prior to his election was 20,249; that while the act of June 30, 1925, provided that his annual salary should be $2500, yet the county board fixed his salary at $1200 per annum, and that the county clerk refused to issue a voucher for the relator's salary for the month of December, 1926, at the statutory rate. Neither an appearance nor a pleading of any character was filed by the respondents to the three petitions last mentioned, but, since the question raised upon all the petitions is the same, they were heard and considered together.

The relators contend that the act of June 30, 1925, which fixes the salaries of the several county judges of the State, is authorized by sections 18 and 32 of article 6 of the constitution. The respondents, on the contrary, insist that the county judge is a county officer; that the power to fix that officer's salary is vested solely in the county board by sections 8, 9 and 10 of article 10 of the constitution, and, consequently, that the act of June 30, 1925, is void.

Section 1 of article 6 of the constitution provides that the judicial powers, except as otherwise provided in the article, shall be vested in one supreme court, circuit courts, county courts, justices of the peace, police magistrates, and in such courts as may be created by law in and for cities and incorporated towns. By section 18 of the same article it is provided that "there shall be elected in and for each county, one county judge and one clerk of the county court, whose terms of office shall be four years. But the General Assembly may create districts of two or more contiguous counties, in each of which shall be elected one judge, who shall take the place of, and exercise the powers and jurisdiction of county judges in such districts. County courts

shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, appointment of guardians and conservators, and settlement of their accounts, in all matters relating to apprentices, and in proceedings for the collection of taxes and assessments, and such other jurisdiction as may be provided for by general law." Section 32 of article 6, so far as it is applicable, reads: "All officers provided for in this article shall hold their offices until their successors shall be qualified, and they shall, respectively, reside in the division, circuit, county or district for which they may be elected or appointed. The terms of office of all such officers, where not otherwise prescribed in this article, shall be four years. All officers, where not otherwise provided for in this article, shall perform such duties and receive such compensation as is or may be provided by law."

Article 6 of the constitution covers the whole judicial power of the people of the State and is the source of all legislative authority respecting courts. (*People v. Olson,* 245 Ill. 288; *Missouri River Telegraph Co. v. First Nat. Bank,* 74 id. 217.) County courts constitute an essential part of the system of courts erected by the constitution. The office of county judge is created by section 18 of article 6. Instead, however, of electing a county judge in each county, the same section permits the General Assembly to create districts of two or more contiguous counties. In each of such districts, when created, only one judge shall be elected. The General Assembly is also authorized to enlarge the jurisdiction of county courts by general law. When these legislative powers to create districts of contiguous counties and to confer additional jurisdiction upon county courts, as well as the wide range in the number of inhabitants of the several counties, are considered, it is obvious that the question of fixing the compensation of county judges, as of other judges, should be left for determination from time to time. The pertinent provision of section 32

of article 6 is that "all officers, where not otherwise provided for in this article, shall perform such duties and receive such compensation as is or may be provided by law." Article 6 makes no other provision with respect to the compensation of county judges. Hence section 32 of that article authorizes the General Assembly to fix their salaries.

The respondents, however, argue that the office of county judge is created by section 8 of article 10 of the constitution, which provides that in each county there shall be elected, among other county officers, a county judge; that by section 9 of the same article the clerks of all the courts of record, the treasurer, sheriff, coroner and recorder of deeds of Cook county, shall receive as their only compensation for their services, salaries to be fixed by law; that section 10 of article 10 provides that the county board, except as provided in section 9 of the same article, shall fix the compensation of all county officers, with the amount of their necessary clerk hire, stationery, fuel, and other expenses; that the county judge is not included in the enumeration of county officers in section 9 and hence is within the express provision of section 10, which authorizes the county board to fix the compensation of all county officers not excluded by section 9; that sections 8, 9 and 10 of article 10 should be construed together, and that such construction requires that the compensation of the county judge shall be fixed by the county board and not by an act of the General Assembly.

Respondents' contentions, if sustained, would require that the salaries of the State's attorney and county superintendent of schools be fixed by the county board, for neither of these officers is among the county officers whose salaries, by section 9 of article 10, shall be fixed by law. Section 22 of article 6 of the constitution provides that at the election for members of the General Assembly in the year 1872, and every four years thereafter, there shall be elected a State's attorney in and for each county, whose term of office

shall be four years.  Although the office of State's attorney
is created by section 22 of article 6, yet the State's attorney
is a county officer.  (*Cook County* v. *Healy,* 222 Ill. 310;
*People* v. *Williams,* 232 id. 519.)  The provision which
governs the fixing of the compensation to be paid the in-
cumbent of that office is contained in section 32 of article 6,
that all officers, where not otherwise provided for in the
article, shall perform such duties and receive such compen-
sation as is or may be provided by law.  While State's
attorneys are within the letter of section 10 of article 10,
which authorizes the county board, except as provided in
section 9 of the same article, to fix the compensation of all
county officers, yet State's attorneys are excepted from sec-
tion 10 by section 32 of article 6, and the salaries of State's
attorneys are fixed by law and not by the county boards of
the respective counties.  *Hoyne* v. *Danisch,* 264 Ill. 467;
*Butzow* v. *Kern,* 264 id. 498.

The county superintendent of schools, who is a county
officer, is not enumerated in section 9 of article 10 of the
constitution as one of the officers whose salary shall be fixed
by law.  Yet the salary of the county superintendent of
schools is not fixed by the county board under section 10 of
article 10 of the constitution, because section 5 of article 8,
which permits the office to be created, provides that the
qualifications, powers, duties, compensation, and time and
manner of election and term of office of that officer, shall
be prescribed by law.  The county board has authority to
fix the compensation of all county officers for which the
constitution makes no other provision.  (*Hoyne* v. *Danisch,*
*supra.*)  Other constitutional provision in respect of the
compensation of the county superintendent of schools hav-
ing been made, that officer, like the State's attorney, is not
one of the county officers whose compensation is fixed by
the county board by authority of section 10 of article 10 of
the constitution.  Section 5 of article 8 of the constitution
vests the power of fixing the compensation of county super-

intendents of schools in the General Assembly. *Jimison* v. *Adams County,* 130 Ill. 558.

The analogy between the office of county judge on the one hand and the offices of State's attorney and county superintendent of schools on the other is not sustainable, the respondents argue, for neither the State's attorney nor the county superintendent of schools is enumerated as a county officer in section 8 of article 10 of the constitution, while the county judge is so designated in that section. The sixth article of the constitution does not fix the time of the election of county judges. Section 8 of article 10, among other things, determines when the county judge and certain other county officers shall be elected. Section 10 of article 10 is a general provision, which authorizes the county board to fix the compensation of all county officers except as provided in the ninth section of the same article. Section 9 provides that certain Cook county officers shall receive, as the only compensation for their services, salaries to be fixed by law. Provision having been made for the fixing of the compensation of the county judge and State's attorney by section 32 of article 6 and of the county superintendent of schools by section 5 of article 8, it was not necessary to enumerate these officers in section 9 of article 10, nor was such an enumeration germane to the subject matter of that section. The general provision of section 10 of article 10 concerning the fixing of the compensation of county officers yields to the specific provisions with reference to the fixing of the compensation of the State's attorney and county superintendent of schools, and likewise must yield, with respect to fixing the compensation of the county judge, to the specific or particular provision of section 32 of article 6.

It is an established canon of constitutional construction that no one provision of the constitution is to be separated from all the others and to be considered alone, but that all the provisions bearing upon the particular subject are to be

brought into view and to be so interpreted as to effectuate the great purposes of the instrument. (6 R. C. L. pp. 47, 48.) Cooley, in his work on Constitutional Limitations, (6th ed. p. 72,) well said: "The rule applicable here is, that *effect is to be given, if possible, to the whole instrument* and to every section and clause. If different portions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative rather than one which may make some words idle and nugatory. This rule is applicable with special force to written constitutions, in which the people will be presumed to have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, leaving as little as possible to implication. It is scarcely conceivable that a case can arise where a court would be justified in declaring any portion of a written constitution nugatory because of ambiguity. One part may qualify another so as to restrict its operation or apply it otherwise than the natural construction would require if it stood by itself, but one part is not to be allowed to defeat another if by any reasonable construction the two can be made to stand together." When general and special provisions of a constitution are in conflict the special provisions should be given effect to the extent of their scope, leaving the general provisions to control in cases where the special provisions do not apply. The particular intent incompatible with a general intent will be treated as an exception. (12 Corpus Juris, 709.) It follows that section 32 of article 6 empowers the General Assembly to fix the compensation of county judges, and in that respect excepts these officers from the general provision of section 10 of article 10 of the constitution.

The writ of *mandamus* is awarded in each of the cases.

*Writs awarded.*

Mr. JUSTICE DUNCAN, dissenting.