(No. 47981.—

DANIEL WALKER *et al.,* Appellees, v. THE STATE BOARD OF ELECTIONS *et al.,* Appellants.

*Opinion filed Nov. 15, 1976.—Rehearing denied Jan. 28, 1977.*

544

548

SCHAEFER, J., took no part.

UNDERWOOD, J., concurring in part and dissenting in part.

Burditt and Calkins, of Chicago (Tom Scheuneman, Thomas J. Immel, and Michael V. Hasten, of counsel), for appellants.

Chester T. Kamin, of Jenner & Block, of Chicago, and Thomas F. Londrigan, of Londrigan & Potter, of Springfield, for appellees.

Earl L. Neal, of Chicago, for *amici curiae* Cecil A. Partee, President of the Illinois Senate, *et al.*

MR. JUSTICE CREBS delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Sangamon County which held unconstitutional certain

portions of the Election Code providing for creation of a State Board of Elections (Ill. Rev. Stat. 1973, ch. 46, par. 1A–1). The defendants have appealed directly to this court pursuant to Supreme Court Rule 302(a). Ill. Rev. Stat. 1973, ch. 110A, par. 302(a).

On June 30, 1975, the Illinois Better Government Association filed a complaint with the State Board of Elections, alleging that Daniel Walker, James Sneider and the All-Illinois Democratic Committee had failed to comply with requirements of article 9 of the Election Code (hereinafter referred to as the Campaign Disclosure Act) (Ill. Rev. Stat. 1975, ch. 46, par. 9–1 *et seq.*). The All-Illinois Democratic Committee was an organization formed by Sneider and others for the purpose of raising money to retire debts incurred during the 1972 gubernatorial campaign of Governor Walker. On July 3, 1975, Michael E. Lavelle, a member of the State Board of Elections, was appointed hearing officer to conduct a preliminary hearing on the complaint.

On July 7, 1975, the plaintiffs in the instant case, Walker, Sneider and the All-Illinois Democratic Committee, filed a suit to obtain an injunction and a declaratory judgment against Lavelle and the State Board of Elections. The complaint alleged that Public Act 78–918 (Ill. Rev. Stat. 1973, ch. 46, art. 1A), which established the State Board of Elections, was unconstitutional and sought a declaratory judgment to that effect. Specifically, it was alleged that the method of selecting members of the State Board of Elections and the method by which the Board resolves tie votes are unconstitutional. The plaintiffs also requested a temporary restraining order and injunctive relief prohibiting the defendants from proceeding with the complaint filed by the Better Government Association and further prohibiting the Board from conducting any other function. The plaintiffs were granted an *ex parte* temporary restraining order barring the defendants from proceeding with the complaint filed by the Better Government

Association. After that order was dissolved, a second temporary restraining order was issued. The plaintiffs filed a motion for judgment on the pleadings, alleging that there were no material issues of fact with respect to the constitutional issues raised. The defendants then filed an answer to the complaint, denying most of the allegations made by the plaintiffs and raising certain defenses. After hearing extensive arguments, the court granted the plaintiffs' motion for judgment on the pleadings. The court determined that both the method of selecting members of the State Board of Elections and the method used by the Board to resolve tie votes were unconstitutional. Accordingly, the court issued a declaratory judgment limiting the Board to the performance of ministerial functions. Furthermore, the court enjoined the Board from hearing the complaint filed by the Better Government Association. A notice of appeal was filed, and the trial court granted a stay order pending the appeal.

The first of several issues raised by the defendants is that the plaintiffs did not have standing to bring this action. It is well established that a court will not entertain a challenge to the constitutionality of a statute by a party who is not affected by the statute or aggrieved by its operation. (*Edelen v. Hogsett,* 44 Ill. 2d 215.) The defendants assert that there is nothing in the record to show that the plaintiffs were aggrieved in any manner by the alleged unconstitutionality of the statute which created the State Board of Elections. In support of that argument, the defendants allege that the Board has not threatened to take action against any of the plaintiffs and cite authority for the proposition that a party cannot challenge administrative action based upon what an agency "might do."

We find the defendants' argument to be without merit. We need only consider the complaint filed by the Better Government Association to determine that the plaintiffs were affected by the alleged unconstitutionality of the method used to select members of the State Board

of Elections. That complaint alleged that each of the plaintiffs had violated certain provisions of the Campaign Disclosure Act. After the complaint was filed, a hearing examiner was appointed and a date was set for a preliminary hearing on the matter. If the Board had held a hearing and found that the plaintiffs had violated any provision of the Campaign Disclosure Act, the Board would have had a statutory duty to report the violation to the Attorney General and to the appropriate State's Attorney. (Ill. Rev. Stat. 1975, ch. 46, par. 9–23.) The Board also would have had the power and duty to issue an order directing the plaintiffs to take such action as the Board deemed necessary to correct the violation. (Ill. Rev. Stat. 1975, ch. 46, par. 9–21.) Since one of the allegations made by the Better Government Association was that the plaintiffs had failed to file a statement of organization pursuant to section 9–3 of the Act, the plaintiffs could have been prosecuted criminally if their violation were judged to be "willful." (Ill. Rev. Stat. 1975, ch. 46, par. 9–26.) A party has standing to challenge the validity of a statute if he has sustained or if he is in immediate danger of sustaining some direct injury as a result of enforcement of the statute. (*Cramp v. Board of Public Instruction*, 368 U.S. 278, 7 L. Ed. 2d 285, 82 S. Ct. 275.) When the Better Government Association filed its complaint against the plaintiffs, the State Board of Elections obtained jurisdiction to hear the charges, and the danger to the plaintiffs was immediate.

The defendants also assert that this case is not ripe for constitutional adjudication because the plaintiffs have failed to exhaust the administrative remedies available to them. The argument is based on the contention that if the complaint of the Better Government Association were to proceed to hearing, the plaintiffs would allege that the All-Illinois Democratic Committee was not a "State political committee" and was therefore not subject to the Campaign Disclosure Act. As a general rule, a party who is

aggrieved by administrative action cannot seek relief in the courts without first pursuing all administrative remedies available to him. (*Illinois Bell Telephone Co. v. Allphin,* 60 Ill. 2d 350.) The defendants maintain that the plaintiffs should have presented their nonconstitutional defense to the State Board of Elections before filing suit for injunctive and declaratory relief. If the plaintiffs had prevailed at a hearing before the Board, there would have been no need for court intervention. If the Board had ruled against the plaintiffs, the constitutional questions could then have been presented in court.

We have recognized certain exceptions to the general rule that a party must exhaust administrative remedies before seeking judicial relief. One of those exceptions applies in this case. In *Bank of Lyons v. County of Cook,* 13 Ill. 2d 493, we considered the distinction between a statute invalid in its terms and a statute invalid only in its application. There we held that a party need not exhaust administrative remedies if the alleged constitutional infirmity is found in the terms of a statute. If a statute is valid on its face but is applied in a discriminatory or arbitrary manner, on the other hand, the challenging party must pursue administrative remedies before seeking judicial relief. In the instant case, the plaintiffs contend that the statute providing for the selection of the State Board of Elections is unconstitutional. If the plaintiffs' argument is accepted, our decision will affect the jurisdiction of the Board in all matters. The plaintiffs do not merely attack the statute as it is applied to them, but rather challenge the statute in its terms. Consequently, we hold that the plaintiffs were not required to exhaust their administrative remedies.

The defendants also maintain that the trial court erred in granting the plaintiffs' motion for judgment on the pleadings because the answer filed by the defendants denied the material allegations of the plaintiffs' complaint and raised certain defenses. A judgment on the pleadings is

proper if only questions of law and not of fact exist after the pleadings have been filed. (*City of Champaign v. Roseman,* 15 Ill. 2d 363.) A motion for judgment on the pleadings admits the truth of facts well pleaded by the opposite party. *Cunningham v. MacNeal Memorial Hospital,* 47 Ill. 2d 443.

The plaintiffs' complaint for injunctive and declaratory relief raised only issues of constitutional law. The only material allegations of fact made by the plaintiffs were that a complaint had been filed against them with the State Board of Elections and that an actual controversy existed between them and the defendants. The defendants acknowledged in their answer that a complaint against the plaintiffs had been filed by the Better Government Association with the State Board of Elections. There was no question of fact, therefore, concerning whether or not an actual controversy did in fact exist between the plaintiffs and the defendants. The defendants assert that a judgment on the pleadings was improper because five defenses were pleaded in their answer. Those defenses were that the plaintiffs did not have standing to raise the constitutional questions, that the plaintiffs failed to exhaust administrative remedies available to them, that the action was not ripe for constitutional adjudication, that no justiciable controversy was raised by the complaint and that the plaintiff Walker was estopped from maintaining the action. Since these defenses all raise only questions of law, the court was not precluded from granting a judgment on the pleadings. The defendants contend that a material question of fact was disputed, namely whether the All-Illinois Democratic Committee was a "State political committee" subject to the Campaign Disclosure Act. This is a question of fact which may have been raised if the case had been heard by the Board. The question was not raised by the pleadings and was not before the trial court. The plaintiffs raised only constitutional issues, and since the statute was attacked on its face rather than as applied to

the plaintiffs, no questions of fact had to be resolved before reaching the constitutional questions.

The plaintiffs contend that the method used to select the members of the State Board of Elections is violative of article V, section 9(a), of the Illinois Constitution of 1970. The statute providing for the appointment of the first State Board of Elections states:

> "In the appointment of the first State Board of Elections the speaker of the House and the House Minority Leader shall each designate 2 nominees to serve for a term ending June 30, 1975; and the President of the Senate and the Senate Minority Leader shall each designate 2 nominees to serve for a term ending June 30, 1977. All nominees to the first Board and all subsequent nominees shall be persons who have extensive knowledge of the election laws of this State. The Governor shall appoint to the Board one of the nominees of each legislative officer. The terms of all subsequent members of the Board, upon expiration of the original terms, shall be for terms of 4 years. Each member of the Board shall serve until his successor is duly appointed and has qualified." (Ill. Rev. Stat. 1973, ch. 46, par. 1A—3.)

The statute providing for appointments to fill vacancies and new terms on the State Board of Elections reads as follows:

> "An appointment to fill each vacancy and for each new term on the State Board of Elections shall be made from 2 nominees designated by the same legislative officer and in the same manner as the original appointment for that position. Each appointment to fill a vacancy shall be for the completion of the term of that position. In odd-numbered years, the legislative officer authorized in this Article to designate nominees shall so designate the nominees no later than May 30 and the Governor shall appoint the members no later than June 15. If the Leadership of either the Senate or the House of Representatives shall have changed in such manner that the officer authorized to designate nominees to fill a vacancy is of different political party affiliation from the officer making the prior designation for the vacated position, the other officer of the Senate or House of Representatives,

as the case may be, shall designate the nominees to fill the vacancy." (Ill. Rev. Stat. 1973, ch. 46, par. 1A–5.)

Article V, section 9(a), of the Constitution provides:

> "The Governor shall nominate and, by and with the advice and consent of the Senate, a majority of the members elected concurring by record vote, shall appoint all officers whose election or appointment is not otherwise provided for. Any nomination not acted upon by the Senate within 60 session days after the receipt thereof shall be deemed to have received the advice and consent of the Senate. The General Assembly shall have no power to elect or appoint officers of the Executive Branch." (Ill. Const. 1970, art. V, sec. 9(a).)

The plaintiffs assert that members of the State Board of Elections are executive officers and that, pursuant to the statute, the legislature participates in the appointment of these officers.

In response, the defendants raise a variety of arguments. Initially, we may dispose of the defendants' contention that the manner of selecting members of the Board does not violate article V, section 9(a), since the General Assembly as a whole does not participate in the actual selection process. It is now settled that the proscriptions of section 9(a) apply with equal force to indirect appointments by the General Assembly through its legislative leaders. *King v. Lindberg,* 63 Ill. 2d 159.

The defendants also allege that the participation of legislative leaders in the selection process does not constitute an "election" or "appointment" of the Board members within the meaning of section 9(a). In accordance with the statute, the four legislative leaders each nominate two individuals, and it is the Governor who actually appoints members of the Board. While it may technically be true that the Governor retains the power to appoint Board members, that power is so limited by statute that we must find the legislative leaders do participate in the *de facto* exercise of the appointive power. The General Assembly has expressed a view supportive of our conclusion. In Senate Joint Resolution

41, passed by both houses of the General Assembly subsequent to the enactment of Public Act 78—918, it was declared: "*Resolved,* That it is \*\*\* the clear intent of the Illinois General Assembly that the power given under Public Act 78—918 to the Governor to 'appoint' was limited in fact to a selection between 2 appointees by each respective leader of the General Assembly \*\*\*." We hold that section 9(a) is applicable to this case, notwithstanding the Governor's retention of at least nominal power to appoint Board members.

In addition, defendants insist that, even if section 9(a) features a general rule barring legislative appointments of executive officers, nonetheless article III, section 5, creates a specific exception to that rule in the case of the State Board of Elections. Article III, section 5, states in pertinent part: "The General Assembly by law shall determine the size, manner of selection and compensation of the Board." The defendants argue that, if separate parts of a constitution appear to be in conflict, courts should favor a construction which will render every provision operative. The defendants also maintain that a specific constitutional provision will prevail over a general section if the two are incompatible, citing *People ex rel. Nauert v. Smith,* 327 Ill. 11, and *People ex rel. Ogilvie v. Lewis,* 49 Ill. 2d 476.

We have no quarrel with the applicability of these principles. Rather, we differ as to the manner in which these principles are to be applied to this case. If the terms of the statute establishing the method for choosing members of the State Board of Elections had been incorporated into section 5 of article III itself, then we would regard that section as creating an exception to the general rule found in article V, section 9(a). As adopted, however, article III, section 5, sanctions no particular method of selection. While section 5 does not by its terms prohibit legislative appointment, neither does it expressly permit the practice. As such, its effect is neutral. We find

no incompatibility which requires us to treat article III, section 5, as fashioning an exception to the proscription against legislative appointment contained in section 9(a).

Assuming, however, the existence of an apparent inconsistency, we believe that the proscription of section 9(a) must be accorded primacy. Applying the same rules of construction utilized by defendants, we note that article III, section 5, imposes upon the General Assembly the responsibility for determining the manner by which Board members are to be selected. Section 5 thus recognizes in the General Assembly a wide discretion to choose an appropriate method of selection. To be measured against this general recognition of authority, nevertheless, is the specific prohibition against legislative appointment found in section 9(a). It follows that, if we are to give logical effect to both provisions, we must treat article V, section 9(a), as a limitation upon the otherwise broad authority recognized in the General Assembly by article III, section 5.

In a related argument, the defendants assert that, notwithstanding the all-encompassing language of section 9(a)'s proscription, that section was intended to apply only to appointments made pursuant to its terms. In the instant case, defendants continue, appointments are made in accordance with the terms of article III, section 5, and thus are "generically different" from appointments which occur pursuant to the terms of article V, section 9(a). In order to answer this argument, we must first look to the language of article V, section 9(a).

Article V, section 9(a), vests in the Governor the power to appoint all officers "whose election or appointment is not otherwise provided for." (Ill. Const. 1970, art. V, sec. 9(a).) We have observed in the past that, as to statutory offices, this language recognizes in the General Assembly great discretion to provide methods of selection other than gubernatorial appointment. (*People v. Chicago Transit Authority*, 392 Ill. 77, 97-98; *People ex rel.*

*Peterson v. Pollock,* 306 Ill. 358, 361.) Yet it is axiomatic that if the legislature could evade the proscription against legislative appointment of executive officers, merely by "otherwise provid[ing] for" its own exercise of the appointive power, then the ban would be rendered completely nugatory. Therefore, in the case of statutory offices, the proscription against legislative appointments necessarily limits the range of viable alternatives where the General Assembly seeks to devise a method of selection other than gubernatorial appointment.

The same result must follow where an office is created or mandated by the Constitution. So much is evident from a close reading of *People v. Evans,* 247 Ill. 547. In *Evans,* this court upheld the constitutionality of a statute which vested in county judges the power to appoint members of miners' examining boards. Analyzing parallel language contained in the 1870 Constitution (Ill. Const. 1870, art. V, sec. 10), the court stated:

> "The language found in said section of the constitution, 'and whose appointment or election is not otherwise provided for,' is plain and unambiguous, and clearly indicates that if by the constitution an office is established and the method pointed out in the constitution for filling such office is otherwise than by appointment by the Governor, the portion of the section which provides that 'the Governor shall nominate and by and with the advice and consent of the senate' shall appoint all officers, etc., would not apply as to such constitutional office; \*\*\*." (*People v. Evans,* 247 Ill. 547, 556; *Elliott v. University of Illinois,* 365 Ill. 338, 348.)

Clearly, then, where the Constitution "otherwise provide[s] for" an office within the meaning of section 9(a), it is only "the portion" of the section vesting appointive power in the Governor which is rendered inapplicable. The remainder of that section (*i.e.,* "the portion" forbidding

legislative appointment of executive officers) continues to operate as a restriction upon the permissible scope of implementing legislation, unless overridden by the constitutional provision establishing the office in question.

As we have seen, article III, section 5, does not by its terms override the proscription against legislative appointment contained in article V, section 9(a). Furthermore, we believe that no intent to override is fairly inferable. The focus of the floor debates at the 1970 Constitutional Convention, insofar as they pertain to article III, section 5, concerned the need for a central election authority and the relative merits of including reference to such an authority in the Constitution. Little thought appears to have been given to the particular manner in which Board members might be chosen. The report of the Committee on Suffrage and Constitution Amending sheds no light, as the committee voted not to recommend inclusion of a provision for a State Board of Elections in the Constitution. (7 Record of Proceedings, Sixth Illinois Constitutional Convention 2358 (hereinafter cited as Proceedings).) Finally, in commenting upon article III, section 5, the authors of the explanation to the voters merely stated: "This section is new and self-explanatory." (7 Proceedings 2693.) In contrast, the intent regarding article V, section 9(a), is manifest. The report of the Committee on the Executive relates that section 9(a) "carries forward existing language which would block *any* effort at legislative selection of an officer in the executive branch." (Emphasis added.) (6 Proceedings 385-86.) To like effect is the explanation to the voters, wherein it is stated that section 9(a) "maintains the ban on election or appointment of executive officers by the General Assembly." (7 Proceedings 2709.) This ban has been incorporated in each constitution of this State since 1848. Absent affirmative evidence to the contrary, we must presume that the ban was intended to apply here.

In so determining, we are mindful of the possible ramifications of the defendants' position, if accepted.

Defendants would seemingly read article III, section 5, as allowing the General Assembly *carte blanche* authority to choose any method for selecting Board members. Carried to its logical extreme, defendants' argument would permit the legislative leaders to appoint themselves to the Board, as counsel for defendants conceded during oral argument before the trial court. We need not elaborate upon the policy considerations which militate against such an interpretation. (See *People ex rel. Scott v. Grivetti,* 50 Ill. 2d 156.) Also, defendants' position would presumably allow the General Assembly to confer appointive power upon private individuals and organizations, a practice we have condemned as an unconstitutional delegation of sovereign power. (*People ex rel. Rudman v. Rini,* 64 Ill. 2d 321; *Illinois Farmers' Institute v. Brady,* 267 Ill. 98; *Lasher v. People,* 183 Ill. 226.) We reject the notion that article III, section 5, allows the General Assembly such unrestricted authority.

The defendants concede that members of the Board are officers of the executive branch of government. The allegation that members of the Board are executive officers, however, has been challenged in an *amici curiae* brief filed by leave of this court on behalf of the President and the Minority Leader of the Illinois Senate and the Speaker and the Minority Leader of the Illinois House of Representatives. It is alleged in their brief that the State Board of Elections has executive, legislative and judicial functions and that article V, section 9(a), does not apply to this situation.

The first argument made on behalf of the legislative leaders is that article V, section 9(a), was intended to prohibit legislative appointment only of those officers listed in the Illinois Constitution as executive officers of the State. Those officers are the Governor, Lieutenant Governor, Attorney General, Secretary of State, Comptroller and Treasurer. (Ill. Const. 1970, art. V, sec. 1.) We reject this argument. Article V, section 9(a), specifically

proscribes legislative appointment of any officer of the executive branch. There are officers in the executive branch of government, of course, other than those listed in article V, section 1.

The legislative leaders also maintain that the Board performs some duties which are quasi-legislative or quasi-judicial and that members of the Board should not be considered executive officers. We agree that some of the Board's functions, as those functions are prescribed in the Election Code, may be considered quasi-legislative or quasi-judicial. Nevertheless, "[i]n determining whether an officeholder is an 'officer of the Executive Branch,' we must give the greatest consideration to his predominant or primary duties." (*King v. Lindberg,* 63 Ill. 2d 159.) After a review of the character and scope of the functions assigned to the Board, we have concluded that the duties of its members are primarily executive in nature. Section 1A—1 of the Election Code reads: "A State Board of Elections is hereby established which shall have general supervision over the administration of the registration and election laws throughout the State, and shall perform only such duties as are or may hereafter be prescribed by law." Analogously, in *King* we declared that "[t]he primary function of the permanent [State Fair] board is to supervise and operate the State Fair, and this is clearly an executive function." (63 Ill. 2d 159, 163.) While Board members may exercise certain quasi-legislative or quasi-judicial functions, we regard these functions as incidental to the Board's executive responsibilities.

In *King v. Lindberg,* we held unconstitutional a statute which allowed the appointment of State Fair Board members by leaders of the General Assembly. However, unlike the State Fair Board, which was purely a creature of the legislature, the State Board of Elections is an agency whose establishment was mandated by article III, section 5, of the 1970 Constitution. Thus while in *King* we took cognizance of the legislature's objectives in establishing the

State Fair Board, in the instant case it becomes important to look to the intentions of the drafters of our constitution. A reading of the convention debates evidences the concern of the delegates that a strong central authority be created to administer the election laws of this State. Illustrative of this concern is the following statement by Delegate Keegan, who presented to the convention the provision which later became article III, section 5: "We need a central election authority, bent to no particular partisan point of view, to implement the policy decisions of the General Assembly." (2 Proceedings 1056.) We also note that, in the only colloquy specifically directed to that subject during the debates, Delegate Keegan expressed the belief that the proposed board would be a part of the executive branch of government. 5 Proceedings 4300.

We feel that a broad interpretation of section 9(a) of article V would best effectuate the intentions of the framers of our constitution. The task of the General Assembly was to implement the constitutional directive embodied in article III, section 5. In our view, that directive envisioned the establishment of a strong executive agency. Accordingly, we hold that members of the State Board of Elections are "officers of the Executive Branch" within the meaning of article V, section 9(a).

As regards the method by which the Board resolves tie votes, the relevant statutory provision is section 1A—7.1 of the Election Code (Ill. Rev. Stat. 1973, ch. 46, par. 1A—7.1), which provides:

> "In the event there is a tie vote of the membership of the State Board of Elections with respect to proposed action of the Board or with respect to any issue requiring a vote by the Board, the clerk of the Board upon the direction of any 2 members who certify that there is a deadlock, shall select by lot the name of one of the members of the Board. The member so selected shall be disqualified from voting on the particular proposition and the remaining qualified members shall proceed to decide the proposition. The vote on any proposition decided pursuant to the tie-breaking procedure of this Section

shall not be reconsidered nor shall any policy determined thereby be revised for 9 months except by unanimous vote of the members of the State Board."

The plaintiffs contend that the tie-breaker provision violates due process of law because it causes decisions to be made by lot or by chance in some cases. The plaintiffs also maintain the tie-breaker contravenes the mandate of article III, section 5, of the Illinois Constitution that "[n] o political party shall have a majority of members of the Board." Ill. Const. 1970, art. III, sec. 5.

It is beyond dispute that "[a] dministrative as well as judicial proceedings are governed by the fundamental principles and requirements of due process of law." (*Brown v. Air Pollution Control Board,* 37 Ill. 2d 450, 454; *Ellis v. Illinois Commerce Com.,* 44 Ill. 2d 438.) In such proceedings, "[t] he object of this constitutional safeguard is to preserve the personal and property rights of a person against the arbitrary action of public officials." (*People v. Belcastro,* 356 Ill. 144, 147.) "Due process of law presupposes a fair and impartial hearing before a fair and impartial tribunal." (*Smith v. Department of Registration and Education,* 412 Ill. 332, 341.) Yet the guarantee of a fair and impartial hearing would be a mockery if the process by which the tribunal arrived at its decision were itself arbitrary and capricious.

The tie-breaker procedure at issue in this case is to be employed whenever there is a "tie vote of the membership *** with respect to proposed action of the Board or with respect to any issue requiring a vote by the Board" (Ill. Rev. Stat. 1973, ch. 46, par. 1A—7.1), and any two members certify to the presence of a deadlock. Necessarily included within the tie breaker's scope are those actions and issues upon which rights of individual parties depend. As a result, if the tie breaker, when utilized, causes decisions to be arrived at in an arbitrary manner, the statute must then be considered violative of due process.

In our estimation, the tie-breaker scheme does cause

decisions to rest upon an arbitrary basis. Operation of the tie breaker results in the disqualification of one Board member whose name is selected by lot. The remaining members then "proceed to decide the proposition," the logical expectation being that each member will adhere to his former position, with two of the three members now constituting a majority. Since the resolution of the controversy depends upon the identity of the member eliminated by the lottery, the ultimate outcome rests not upon reasoned deliberation, but upon chance. To highlight and reinforce the arbitrary character of the scheme, section 1A–7.1 further prohibits the Board, except by unanimous vote, from reconsidering any vote or revising any policy determined pursuant to the tie breaker for a period of nine months, irrespective of the merits or the sentiments of the majority.

We realize that the remaining members are not inflexibly precluded from altering their prior views upon the disqualification of their colleague. Nevertheless, it strains credulity to suggest that any shift of position would be likely to occur, given the fact that the tie breaker comes into operation only when the inability to reach agreement produces a deadlock. We also concur with defendants that the tie breaker does not overtly cause decisions to be made through chance, as would be the case, for example, if the matter at issue were decided by the flip of a coin. However, since the ultimate outcome, as we have seen, is dependent upon the identity of the member whose name is selected by lot, and who is thereby disqualified from voting upon the proposition at issue, defendants urge upon us a distinction without a difference.

Plaintiffs also contend that the tie-breaker provision contravenes the mandate of article III, section 5, that "[n]o political party shall have a majority of members of the Board." (Ill. Const. 1970, art. III, sec. 5.) We are not impressed with defendants' argument that the tie breaker does not run afoul of article III, section 5, since membership of the Board is left unaffected. Operation of

the tie breaker effectively removes one member from the Board, for purposes of the vote in question. If two of the three remaining members belong to the same political party, the mandate of article III, section 5, will have been violated.

We therefore affirm the judgment of the circuit court of Sangamon County insofar as it holds that the statutory method used to select members of the State Board of Elections and the tie-breaker provision of said statute are unconstitutional. While we recognize that the members, even though improperly selected, have constituted a *de facto* Board, since we find their selection unconstitutional, we reverse that portion of the trial court's order which continues them in office. However, cognizant of the need to allow sufficient opportunity for legislative response, and guided by the recent decision of the United States Supreme Court in *Buckley v. Valeo,* 424 U.S. 1, 144, 46 L. Ed. 2d 659, 759, 96 S. Ct. 612, 694, we stay the effect of our judgment for a period not to extend beyond March 15, 1977.

*Affirmed in part and reversed in part.*

MR. JUSTICE SCHAEFER took no part in the consideration or decision of this case.

MR. JUSTICE UNDERWOOD, concurring in part and dissenting in part:

While I concur with the court's conclusion that the method of nominating members of the State Board of Elections is constitutionally impermissible, I do not agree that the "tie-breaker" procedure violates the due process guarantees of either the Federal or State constitutions.

The court cites no authority for its holding that permitting the clerk of the Board to select by lot the name of one Board member who shall then be disqualified to vote on the deadlocked proposition, leaving it to be resolved by the remaining members, is a denial of due

process to those on the losing side of the proposition. This is said to be so because resolution of the deadlocked question is arrived at in an "arbitrary manner," without "reasoned deliberation," and that "the rights of individual parties" are affected thereby. Certainly this is true. But it is by no means unique. Our own constitution provides a similar method for resolving questions of decennial legislative reapportionment when neither the General Assembly nor the subsequently appointed Legislative Redistricting Commission can reach agreement. In that event this court "shall submit the names of two persons, not of the same political party, to the Secretary of State," who thereafter "publicly shall draw by random selection the name of one of the two persons to serve as the ninth member of the Commission." (Ill. Const. 1970, art. IV, sec. 3(b).) That provision, which is, in my judgment, indistinguishable from the provision for resolving Board of Election deadlocks, was upheld in *People ex rel. Scott v. Grivetti* (1971), 50 Ill. 2d 156, against constitutional challenges on equal protection and first amendment grounds. The rights of individuals are also affected every time an individual's right to public office is decided by lot (Ill. Rev. Stat. 1975, ch. 46, par. 23—27) and when the identity of persons selected for military service is determined by a lottery, to mention only a few illustrative examples. I am aware of no case, and the majority cites none, which has held these lottery methods of resolving those problems to involve a denial of due process even though their use results in most unhappy consequences for the "losers."

Our system of government tolerates these lotteries as a means of resolving important questions because they are believed to be fairest to the interested individuals or groups involved or those who have been unable to agree. For those candidates who receive the same number of votes for a public office there may be no other practical means of breaking the tie other than by tossing a coin or drawing a name from a hat. It is suggested here that

appointment of a fifth member, an "independent," to the Board would be a viable means of avoiding deadlocks. Assuming that individuals of reasonable intelligence exist who are truly "independent," who have been so unconcerned with the qualifications of their public officials and the functioning of their government as to have never voted in a primary election or supported one or the other of the major political parties, the General Assembly might well have thought the public interest best served by leaving to chance the resolution of deadlocked issues rather than to the vote of so politically sterile an individual.

Nor do I agree that random disqualification of a Board member on a deadlocked issue unbalances the political representation of the Board members in the sense that such imbalance is proscribed by the provision in article III, section 5, that "[n]o political party shall have a majority of members of the Board." The temporary disqualification of a Board member on a particular question does not remove him from the Board. I note also that the statute contemplates the occurrence of vacancies (Ill. Rev. Stat. 1975, ch. 46, par. 1A—14), and certainly neither the constitutional drafters nor the General Assembly envisioned that the Board would cease functioning in the event of illness or death of a member (Ill. Rev. Stat. 1975, ch. 46, par. 1A—7).

If the validity of the "tie-breaker" provision is to be considered at all, I would hold it valid.