THE PEOPLE *ex rel.* Grace Odell *et al.* Appellees, *vs.*
M. L. FLANINGAM, Appellant.

*Opinion filed February 19, 1932.*

F. T. CARSON, (J. M. MITCHEM, of counsel,) for appellant.

ROY R. CLINE, State's Attorney, and DOBBINS & DOBBINS, for appellees.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Champaign county in a *quo warranto* proceeding ousting appellant, M. L. Flaningam, from the office of county superintendent of schools of that county.

The State's attorney of Champaign county was by the court given leave to file, and did file, an information in *quo warranto* to test Flaningam's right to hold the office of county superintendent of schools, to which he had been elected and qualified. The information is based on the provisions of section 5 of chapter 122 of our statutes, which provide that no person shall be eligible to become a candidate for or enter upon the duties of the office of county superintendent of schools unless he be of good character, actually engaged in educational work, holds a valid county supervisory certificate or a State certificate granted by the Superintendent of Public Instruction, and has had at least four years' experience in teaching. The first count of the information alleged that Flaningam did not at the time of his election and entry upon the duties of his office hold a valid county supervisory certificate or a State certificate granted by the Superintendent of Public Instruction, and for that reason was disqualified. The second count, *inter alia,* alleged that Flaningam prior to his election and at and prior to June 1, 1930, held the position of superintendent of schools of school district No. 116 in Champaign county, in which district there was conducted a regular four-year high school, and that in the county there existed a non-high school district known as the non-high school district of the county of Champaign, and that it was the duty of the board of education of the non-high school district to issue orders on the county treasurer, on or before the first Tuesday of May in each year, for the payment of the tuition of eighth grade graduates residing in such non-high school district attending the high school in school district No. 116, provided such attendance should be certified

to by the board of education of high school district No. 116, which orders were to be payable out of any funds belonging to the non-high school district; that Flaningam, fraudulently intending to deprive the non-high school district of its funds, on or before the first day of May, 1929, and on or before the first day of May of the four preceding years, in each year did fraudulently present to the board of education of the non-high school district, certificates purporting to be signed by the board of education of high school district No. 116, to each of which certificates in each of said years there were purported to be signed the names of the president and secretary of the board of education of high school district No. 116, and in each such certificate it was falsely stated that certain pupils therein named had during the preceding year attended the high school in school district No. 116 and that each of said pupils was a resident of said non-high school district, which certificates were presented by Flaningam for the purpose of obtaining the moneys of the non-high school district in payment for tuition of pupils so alleged to have been residing in the non-high school district; that Flaningam knew that the certificates were false and fraudulent and that in each of the certificates there were contained the names of high school pupils who did not attend the high school in district No. 116 and the names of high school pupils who did attend the high school in school district No. 116 but who resided in district No. 116 and were not residents of the non-high school district; that Flaningam knew at the time of presenting each of said certificates that the signatures thereon purporting to be the signatures of the president and secretary of the board of education of school district No. 116 were false and had not been signed by such officials or by their authority and had been forged thereto by Flaningam; that by means thereof he obtained from the non-high school district the orders of such district drawn upon the county treasurer of the county in the total sum of $15,000, which

orders were thereafter cashed and paid out of the funds belonging to the non-high school district and which sums were not then owing by the non-high school district, which Flaningam well knew, and that by reason thereof Flaningam was not a person of good moral character and not possessed of the qualifications to enter upon the duties of the office of county superintendent of schools.

Flaningam demurred generally and specially to each count of the information, and upon his demurrers being overruled he filed two pleas. The first plea alleged his nomination and election and the filing of his bond; that he was a citizen of the United States and had resided in the State for more than one year prior to his election; that he had had thirty-seven years' experience in teaching, seventeen years being as principal of the Urbana high school and three years as superintendent of schools in Urbana, and that since January 1, 1929, he had been engaged in causing to be prepared for students and others, materials for debates, theses, etc.; that section 5 of chapter 122 of the Illinois statutes violates sections 6 and 7 of article 7 of the State constitution by requiring eligibility to office greater than the requirements found in the constitution; that it violates article 3, section 18 of article 2 and section 1 of article 4 by delegating through the Teachers Certifying act arbitrary power to administrative officers to determine his qualifications; that he holds a county supervisory certificate renewed to June 30, 1932, and registered to June 30, 1930; that he made the certificates charged to be false according to the information given him, and that he signed the names of the officials of the board of education of district No. 116 believing that he was authorized so to do. He denied the forgery charged to him and denied that he was not of good character. The second plea was in substance the same as the first. To these pleas the State's attorney filed a general and special demurrer. An order was entered sustaining the demurrer, and Flaningam electing to

stand by his pleas, judgment of ouster and a fine of $100 and costs was entered against him.

Appellant's contentions, as stated in his brief, are as follows: "That the office of county superintendent of schools is a constitutional office, as to which the legislature cannot lawfully legislate on those requirements for eligibility which are covered by constitutional provisions; that his pleas aver facts as make him eligible for constitutional office and additional qualifications as to education and experience equal to any qualifications in that regard as the legislature might reasonably require; that the facts alleged in his pleas in explanation of the charge against his character are sufficient that, if true, would rebut the charge made against him; that the legislature, even if it had the power to legislate on the subject of the requirements of eligibility to the office of county superintendent of schools, has done so indirectly, only, by delegating that power to administrative officers."

Section 5 of article 8 of the constitution of 1870 provides that "there may be a county superintendent of schools in each county, whose qualifications, powers, duties, compensation, and time and manner of election, and term of office, shall be prescribed by law." The constitution does not provide that there shall be a county superintendent of schools in each county, and it does not prescribe the qualifications, powers, duties, compensation or term of office, and such incidents to the office of county superintendent of schools were left by the framers of the constitution to be prescribed by the General Assembly. The power to prescribe the qualifications of a county superintendent of schools having been expressly delegated by the constitution to the General Assembly and it having prescribed qualifications requisite to eligibility to that office, it is immaterial whether the office itself be constitutional or legislative.

Flaningam in his plea avers that he holds a county supervisory certificate renewed to June 30, 1932, registered

to June 30, 1930. In 1929 the legislature enacted "An act in relation to certification of teachers and to repeal a certain act therein named," by which it was provided that after April 1, 1930, all county supervisory certificates which had been previously provided for should be invalid and that thereafter only State certificates could be issued. (Smith's Stat. 1931, chap. 122, pars. 481-492.) Paragraph 483 of this act provides: "Examinations for life certificates shall be held according to such regulations and by such examiners as the Superintendent of Public Instruction shall prescribe and appoint. Each applicant who sustains a satisfactory examination shall receive a certificate of the kind applied for, if in the judgment of the Superintendent of Public Instruction his personality and general qualification other than scholarship fit him for the work the certificate shall authorize him to perform. Any life certificate now in force and life certificates issued under the provisions of this act shall be valid during the good behavior of the holder thereof." Flaningam claims that this section is unconstitutional, as being a delegation of arbitrary power by the legislature to administrative officers.

The legislature cannot deal with the details of every particular case, and the method or manner of executing a law must necessarily be left to the reasonable discretion of administrative officers. The power conferred upon the Superintendent of Public Instruction and the State Board of Examiners is an administrative and not a legislative power. (*Board of Education* v. *Board of Education*, 314 Ill. 83.) It is not a delegation of arbitrary legislative or judicial power for the General Assembly to authorize the State examining board and the Superintendent of Public Instruction to determine whether a person is of good moral character before granting him a State certificate. *People* v. *Stokes*, 281 Ill. 159; *Klafter* v. *Examiners of Architects*, 259 id. 15.

In *People* v. *Apfelbaum*, 251 Ill. 18, this court had before it a case involving the right of the State Board of

Health to pass upon the qualifications of an applicant for a license to practice medicine and also to revoke a license for dishonorable conduct. The statute was attacked as delegating judicial powers to the State Board of Health, and we there said: "The possession of the required qualifications must be ascertained by some authority, and the legislature has imposed this duty upon the State Board of Health. In the administration of the law the State Board of Health necessarily exercises discretion and judgment in determining whether or not an applicant possesses the required qualifications, and to that extent its action is judicial in character but it is not the action of a court or action appropriate for a court. It is similar in its nature to the acts of assessors in valuing property for taxation; of boards of review in reviewing such valuations; of clerks of courts and of sheriffs in approving bonds taken by them; of commissioners of highways in laying out and opening roads; of city councils in granting or revoking licenses to keep dram-shops, or of superintendents of schools in granting or revoking teachers' certificates. In none of these cases does the tribunal engaged in the execution of the law exercise judicial power within the meaning of the constitution. The power exercised is ministerial, only, although, as an incident to its exercise, the board is required to do a judicial act, or, rather, an act which is in its nature judicial."

In *Block* v. *City of Chicago*, 239 Ill. 251, where it was claimed that an ordinance was unconstitutional which required all persons engaged in the business of exhibiting moving pictures to obtain a permit and provided that the chief of police should not issue a permit for the exhibition of immoral or obscene pictures, the ordinance was held constitutional, and it was said: "There is as great diversity of opinion as to what constitutes good moral character, but it is beyond question that an officer authorized to

grant a license to keep a dram-shop may determine whether the applicant has a good moral character."

A plea of justification to an information in *quo warranto* must allege the existence or performance of all conditions precedent to the defendant's right to exercise the privilege of office, and it must also show that his right to hold such office continues to the time of filing the information. (*People* v. *Anderson*, 325 Ill. 464; *People* v. *Jacobs*, 312 id. 581.) There is nothing in either of Flaningam's pleas denying that he had included the names of pupils in certificates as having attended the Urbana high school, when, in fact, such pupils had not attended that school. His pleas admit that he signed the names of the school officers to the false certificates without their authority and do not allege any claim of authority to do so. His only attempt at justification for the falsity of these statements is, that "assuming, as he believed he had a right to do, that he was authorized to write the names of the members of the high school board to said certificates or statements he did so, not intending at said dates, or at any other dates, to commit any wrong or injury or to falsely make said statements," and that he made a request that the then county superintendent of schools should correct these certificates over the official signatures.

The proper education of the youth of this country by precept and example is one of the most delicate and important functions of the State, and it is not an arbitrary exercise of power to require that those persons entrusted with such education should themselves possess a good moral character. Flaningam's pleas fail to show that he possessed the statutory qualifications to entitle him to fill the office of county superintendent of schools and to supervise the education of the youth of Champaign county.

The demurrers to the pleas were properly sustained, and the judgment of the circuit court is affirmed.

*Judgment affirmed.*