(No. 23680.—

FRED ELLIOTT *et al.* Appellants, *vs.* THE UNIVERSITY OF ILLINOIS *et al.* Appellees.

*Opinion filed December 16, 1936—Rehearing denied Feb. 18, 1937.*

JONES, J., HERRICK, C.J., and FARTHING, J., dissenting.

James H. Christensen, for appellants.

Otto Kerner, Attorney General, and Defrees, Buckingham, Jones & Hoffman, (William C. Clausen, and Don Kenneth Jones, of counsel,) for appellees.

Per Curiam: This is an appeal from a judgment of the circuit court of Cook county sustaining a motion made by the appellees to strike the amended complaint of appellants and for judgment.

Appellants sought to enjoin the University of Illinois, a corporation, the members of its board of examiners for certified public accountants, and the members of its committee on accountancy, from administering and enforcing "An act to regulate the profession of public accountants," approved May 15, 1903, (Laws of 1903, p. 281,) as amended. (Laws of 1907, p. 472.) The complaint alleged that the act is unconstitutional for various reasons, which we will set out and discuss later.

The act provides, in substance, section 1, that any twenty-one-year-old citizen of the United States, or person who has declared his intention to become such citizen, residing in or having a place for the regular transaction of business as a professional accountant in this State, who is of good moral character, a graduate of a four-year high school or who has an equivalent education, and who has received from the University of Illinois a certificate of his qualifications to practice as a public expert accountant as later provided in the act, shall be known as a certified public accountant. All other persons are forbidden to use that title, or the abbreviation "C. P. A." The 1907 amendment to this section provided that the annual examinations to be held in May, 1908 and 1909, should be open to all appli-

cants without regard to preliminary educational requirements. By section 2 the University of Illinois is authorized to determine the qualifications of applicants for certificates under the act and to make rules for their examination. It shall appoint three examiners, two of whom shall be skilled accountants in active practice and the third either such an accountant or an attorney skilled in the practice of commercial law. Thirty days' notice of these examinations by advertising three successive days in a newspaper at the place of holding the examinations is required. The examinations shall be in "Theory of Accounts," "Practical Accounting," "Auditing" and Commercial Law" as affecting accountancy, and are required to be held at least once a year and as much oftener as the university deems necessary. Section 3 permits the university to exempt from examination applicants who possessed the qualifications listed in section 1, provided such applicants had had five successive years' previous experience as public accountants before making application and had been practicing as public accountants in Illinois on their own account not less than one year prior to the passage of the act. The university is also authorized to exempt from examination applicants who had practiced accountancy outside this State for not less than five years next prior to the passage of the act and who had passed an examination equivalent, in the opinion of the university, to the examination to be held by it. Section 4 requires each applicant to pay $25 to the university when he files his application, and authorizes the university to pay not more than $10 per day for the services of the examiners, together with their necessary traveling expenses. All expenses are payable out of these fees and no expense incurred is to be a charge against the funds of the university. By section 5 the university may revoke any certificate issued by it "for unprofessional conduct or other sufficient cause, provided that written notice shall have been previously mailed to the holder of such certificate twenty days before any hearing

thereon, stating the cause for such contemplated action, and appointing a date for a full hearing thereof by the university: *And, provided, further,* that no certificate shall be revoked until a hearing shall have been had." By section 6 impersonation of a certified public accountant is made a misdemeanor, but it is provided that nothing in the act shall make it unlawful for one who is a certified public accountant under the laws of another State to represent that he is, and to practice as, a certified public accountant in this State.

Appellants contend that the Accountancy act of 1903 was repealed by the passage of the act of 1927, entitled "An act to afford protection to the public by prescribing and regulating the practice of public accounting," approved July 7, 1927. (Laws of 1927, p. 689.) The two acts deal with different subjects matter and are not in conflict. The 1927 act prohibits the practice of accounting without compliance with its terms, while the 1903 act only prohibits the practice of accounting under the title or designation of certified public accountant without compliance with its terms. Moreover, the 1927 act provides in section 18 that it shall not be construed or taken as repealing, or in any way affecting, the act of 1903. The question of whether a statute has been repealed by implication is entirely a matter of legislative intent, (*Continental Ins. Co.* v. *Simpson,* 8 Fed. (2d) 439,) and so appellants' contention fails where, as here, the clear intention is that both acts shall be in force.

Appellants contend that the title of the 1903 act, "An act to regulate the profession of public accountants," and the body of the act, are not germane, as required by section 13 of article 4 of the Illinois constitution. They say that the title purports to regulate public accountants only, while the body of the act deals only with the issuance and use of the title "C. P. A." by certified public accountants. The fact that the title is more comprehensive than the act itself does not bring the act within the above constitutional

restriction. (*People* v. *Roth*, 249 Ill. 532; *People* v. *Sayer*, 246 id. 382.) Restricting the use of the title "Certified Public Accountant" is a regulation of the accounting profession and the title is not misleading.

Appellants contend that the act appropriates money out of the State treasury, in violation of section 16 of article 4 of the State constitution, and that it also authorizes the university, without warrants being issued by the State Auditor, to pay the expenses of administering the act, contrary to section 17 of article 4. Neither of these contentions is well taken, because by the terms of the act no money is paid into the State treasury and none drawn therefrom.

Appellants further claim that the effect of the act is to make the State liable for debts created by the university in administering the act, in violation of section 20 of article 4 of the Illinois constitution. This argument is based on the assumption that the fees collected from applicants are to be paid into the State treasury, but, as we have said, nothing in the act requires the fees to be so paid. The act provides that all expenses of holding the examination and issuing certificates shall be paid out of the fees paid by applicants. There is plainly no intention to make the State liable for the debts of the University of Illinois in violation of the constitution.

Much time is devoted in the argument to the contention that the powers conferred on the university in holding examinations and granting certificates are *ultra vires*. The university is not a private corporation but is an agency of the State. It was founded by an act of the legislature approved February 28, 1867, as the "Illinois Industrial University." In 1885 its name was changed to "University of Illinois." It is maintained by interest from its permanent endowment fund arising from grants of land from the United States and by appropriations from the General Assembly. It is governed by a board of trustees elected by the people. It is managed by a corporation created by the

State, but the State retains the power of selecting trustees, and may through other agents than the trustees sell and dispose of its property or change its charter as the legislature may direct. (*People* v. *University of Illinois,* 328 Ill. 377, 382.) The legislature had full power to direct the university, as the State's agent, to perform the duties enjoined upon it by the act of 1903. What we have said on this point also disposes of the contention that the act is void because it gives the exclusive privilege or franchise to issue "C. P. A." certificates to the university, in contravention of section 22 of article 4 of the Illinois constitution.

Appellants next contend that the act is void because it delegates legislative and judicial powers to the university, in violation of article 3 and section 1 of article 4 of the State constitution. What we said in *People* v. *Apfelbaum,* 251 Ill. 18, 23, 24, of a similar provision in the Medical Practice act of 1899, disposes of this contention. The language referred to was: "Neither the granting nor the revocation of a license to practice medicine is the exercise of judicial power, as that term is understood in reference to the distribution of the powers of government. It is not contended that the State has not the power to prescribe the qualifications of physicians practicing medicine and to punish unqualified persons engaging in such practice, and the existence of such power is not debatable. [Citing authorities.] The possession of the required qualifications must be ascertained by some authority, and the legislature has imposed this duty upon the State Board of Health. In the administration of the law the State Board of Health necessarily exercises discretion and judgment in determining whether or not an applicant possesses the required qualifications, and to that extent its action is judicial in character, but it is not the action of a court or action appropriate for a court. It is similar in its nature to the acts of assessors in valuing property for taxation; of boards of review in reviewing such valuations; of clerks of courts and of

sheriffs in approving bonds taken by them; of commissioners of highways in laying out and opening roads; of city councils in granting or revoking licenses to keep dramshops, or of superintendents of schools in granting or revoking teachers' certificates. In none of these cases does the tribunal engaged in the execution of the law exercise judicial power within the meaning of the constitution. 'The power exercised is ministerial, only, although, as an incident to its exercise, the board is required to do a judicial act, or, rather, an act which is in its nature judicial. No law is construed or applied by the board and no legal rights are submitted to and adjudicated by it, without which, we have seen, judicial power is not exercised.' (*Owners of Lands* v. *People,* 113 Ill. 296.) In that case are cited many cases illustrative of the distinction between the exercise of judicial power and of judgment and discretion in the performance of administrative or ministerial functions." Other cases in which we have reached the same conclusions are *People* v. *Flaningam,* 347 Ill. 328, *Mitchell* v. *Lowden,* 288 id. 327, *People* v. *Stokes,* 281 id. 159, and *People* v. *Brady,* 268 id. 192. In the act under consideration the legislature has established the qualifications for a certified public accountant, and the University of Illinois has the purely ministerial function of determining if the applicant has those qualifications.

Appellants contend that the Accountancy act of 1903 deprives them of due process of law, in contravention of sections 1 and 2 of article 2 and section 22 of article 4 of the Illinois constitution and the fourteenth amendment to the constitution of the United States. It is insisted that the act is an unconstitutional exercise of the police power because it does not embrace any regulations necessary to maintain the public health, comfort, safety or welfare. It is urged that the university is granted arbitrary power in administering the act, thus permitting unjust discrimination between persons coming within the same class, and

that discriminations against citizens of Illinois are made in section 5 because their certificates may be revoked, while certified public accountants licensed by other States are not subject to the act.

Appellants are not in position to complain that section 5 of the act is unconstitutional, because they do not allege that they are about to have their licenses revoked or that the University of Illinois is threatening to revoke their licenses. They specifically allege that they have no licenses. The same is true of section 6, which punishes the act of impersonating a certified public accountant or using the title "C. P. A.," because appellants do not claim that they are using the title of certified public accountant or that they are threatened with prosecution. To raise the constitutionality of a particular provision of a statute appellants must be directly affected by the provision attacked, otherwise our decision as to the validity of such provisions would be mere dictum. *Winberry* v. *Hallihan*, 361 Ill. 121, 131; *People* v. *Diekmann*, 285 id. 97.

The contention that the legislature cannot regulate the use of the title "C. P. A." is based mainly on the case of *Frazer* v. *Shelton*, 320 Ill. 253. We there held the Accountancy act of 1925 unconstitutional because it forbade the practice of accountancy by a person acting as an accountant for more than one person without a certificate, as provided in the act. We said that there is nothing in the business of accountancy requiring such restriction and denounced the act as an unwarranted regulation of private business. In that decision we impliedly approved the Accountancy act of 1903 when we said (p. 269) : "We do not say that it is beyond the power of the General Assembly to enact a statute requiring that no one shall use the term 'certified public accountant' or the term 'public accountant' without having met the requirements of such an act. Such a provision may well be within the power of the legislature on the ground that it is to the public interest that no one

shall use a term indicating that he has been examined and certified as an accountant when such is not the fact. Of such character was the Accountancy act of 1903, herein referred to. * * * Such is a misrepresentation which the legislature may prevent by statute." Again, at page 267, we said: "Counsel for appellee have cited cases which hold that the accountancy acts considered therein are valid. The acts referred to in those cases, however, contained no provision prohibiting any citizen following the business of an accountant though employed by more than one employer. They are acts which regulate the use of the term 'public accountant' or 'certified public accountant'." We hold that it was within the power of the legislature to regulate the manner of acquiring and the use of the title "certified public accountant," and that the act is not an unreasonable exercise of the police power of the State.

There is no arbitrary power conferred on the University of Illinois and no arbitrary and unreasonable classification results from the provisions of section 3 by the power given to exempt certain resident and certain non-resident public accountants from examination. Legislation which is designed to license members of a profession may validly exempt those already engaged therein or those who have had experience for the time required by the act, if the exemptions are reasonable and apply equally to all similarly situated. (*Frazer* v. *Shelton,* 320 Ill. 253; *People* v. *Evans,* 247 id. 547; *People* v. *Logan,* 284 id. 83.) We said in *Williams* v. *People,* 121 Ill. 84: "This proviso does not confer upon the ten years' practitioners any special privilege, immunity or franchise. It does not confer upon them anything—it leaves them as they are." No oppressive results spring from section 3 of the act, and appellants' contention must be overruled.

Appellants rely on *Lasher* v. *People,* 183 Ill. 226, in support of their contention that this act delegates to the University of Illinois appointing powers vested in the Gov-

ernor by section 10 of article 5 of the constitution. However, we held in *People* v. *Evans*, 247 Ill. 547, that the phrase, "and whose appointment or election is not otherwise provided for," is plain and unambiguous in meaning. We also held it clearly indicates that an office established by the constitution, with a different manner of filling such office than by the Governor's appointment, is not subject to the portion of the section which provides that "the Governor shall nominate, and by and with the consent of the senate," shall appoint all officers, etc. We said that it is equally true that if an office be created by the legislature and a method otherwise than by nomination and appointment by the Governor to fill such office is provided for by law, such law would not be subject to constitutional objection on the ground that the legislature had deprived the Governor of a part of his appointing power. In the *Lasher case* we held that the power of appointment is a special franchise, which under section 22 of article 4 of our constitution could not be granted to any private corporation, association or individual. No such aspect is presented in the case before us. Provision is made by the statute for the selection and appointment of the three examiners by the University of Illinois, a public corporation and an agency of the State. This does not contravene the constitution.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

Mr. JUSTICE JONES, dissenting:

The title of the act here involved is "An Act to regulate the profession of public accountants." An examination of its several sections will reveal that there is not a provision in it which attempts to regulate the profession, as such. The sole and only purpose of the act is to create a trade name—"Certified Public Accountant" or "C. P. A." Manifestly it was intended to give a monopoly of the accounting business to those who possess such certificates, and

no pretense is made of regulating the profession of public accountants. The body of the act is not germane to the title and violates section 13 of article 4 of the constitution. The aim of this section is to require the title of the act to express in general terms its objects and purposes so as to prevent fraud or surprise by the insertion into the act of provisions of which the title gives no notice. *People* v. *Roth*, 249 Ill. 532; *People* v. *Stokes*, 281 id. 159; *People* v. *Ankrum*, 286 id. 319.

The act contains six sections. The first authorizes the University of Illinois to issue certificates that a person is a certified public accountant and is entitled to the degree of C.P.A. The second section provides that the university shall determine the qualifications of all persons applying for certificates and authorizes it to appoint three examiners. The third section authorizes the university to waive examinations in certain cases. The fourth section authorizes the university to charge examination fees. The fifth section authorizes the university to revoke certificates for unprofessional conduct or other sufficient cause. The sixth section provides that "If any person shall represent himself to the public as having received a certificate as provided in this act, or shall assume to practice as a certified public accountant, or use the abbreviation C.P.A. * * * without having received such certificate, * * * he shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be fined a sum not exceeding two hundred dollars ($200) for each offense." The entire body of the act up to this point gives no permission to anyone to hold himself out as a certified public accountant unless he has received a certificate from the University of Illinois. Every penalty provided by the act is directed against the use of the trade name by persons who have not received a certificate from the University of Illinois. However, the last sentence of the act contains a proviso that "Nothing herein contained shall operate to prevent one who is the lawful

holder of a certified public accountant certificate issued in compliance with the laws of another State from practicing as such within this State, and styling himself a certified public accountant." No standard of qualification is required by this proviso. If a resident of another State holds a certificate, he can practice his profession in this State upon the same terms as a holder of a certificate issued by the University of Illinois. An illustration of how the act may be used to discriminate against public accountants in this State is to be found in the opinion of the Appellate Court for the First District in *Gore* v. *National Association of Public Accountants,* 231 Ill. App. 38. In that case a private corporation organized under the laws of the District of Columbia was permitted to hold examinations and issue certificates. A representative of such corporation came to Chicago where he conducted examinations and issued certificates. Gore, one of the Board of Examiners appointed by the University of Illinois, instituted proceedings to enjoin the District of Columbia corporation from conducting examinations and issuing certificates in this State. He claimed the examinations conducted by the corporation were merely perfunctory and in no wise comparable with the examinations conducted by the Illinois examiners. The Appellate Court held, and I think with propriety, that the corporation came within the proviso, and that the holders of certificates from the University of Illinois have no exclusive right or privilege that will entitle them to prevent others holding like certificates, issued under the laws of other States, from practicing as certified public accountants in this State, notwithstanding the standards of qualifications are not as high as those of this State. It was also held that the defendant corporation had a right to hold its examinations in this State if it chose.

Another reason for our thinking the act is invalid is that a citizen has a right to pursue any lawful calling he sees fit. It is only when his vocation is connected with a

public interest that the government has any right to interfere with it. "Liberty," as used in the constitution, embraces the free use by all citizens of their powers and faculties, subject only to the restraints necessary to secure the common welfare. The right to contract is both a liberty and a property right. (*Braceville Coal Co.* v. *People,* 147 Ill. 66.) The government has no right to forbid a man from engaging in a lawful trade or occupation or to place substantial obstacles in his way, unless it does so in the exercise of its police powers. In order to invoke those powers, the vocation sought to be prohibited or regulated must have some relationship to the public health, comfort, safety or general welfare of the people. Police powers, like other powers of government are subject to constitutional limitations. It is not within the power of the General Assembly, under the pretense of exercising the police power of the State, to enact laws not necessary to the preservation of the health and safety of the community or the general welfare of the citizens. If it should prohibit that which is harmless in itself, it would be an unauthorized exercise of power and it would be the duty of the courts to declare such legislation void. *Toledo, Wabash and Western Railway Co.* v. *City of Jacksonville,* 67 Ill. 37.

How the vocation of accountancy, especially as it pertains to audits and the preparation of financial statements of private business, can be held to affect public health, morals or general welfare is beyond my comprehension, yet, the act of the General Assembly which is brought in question contains requirements relative to citizenship, age, moral character, education and experience. Furthermore, an applicant for the degree of "C.P.A." from the University of Illinois must take an examination. He is charged a fee of $25 to meet the expense of the examination. He may have his certificate revoked for "sufficient cause." If a person shall represent himself to the public to be a certified public accountant without having a certificate, or if he

shall assume to practice as a certified public accountant without such certificate, he shall be deemed guilty of a misdemeanor and subject to a fine of $200.

It is the claim of the proponents of the law that it does not deny the right of a person to engage in the business of public accountancy but only forbids him to hold himself out as a "certified" public accountant, unless he has a certificate from the University of Illinois. That argues nothing in favor of the validity of the act. One would be indeed obtuse if the purpose of the act is not clearly apparent to him. It was intended to create a monopoly so that the business would be conducted by a group of professionals. No one can doubt the advantage this law gives to the favored class over those who are not certified, even though they may be as competent bookkeepers and accountants as the former class. A statute cannot, under the pretext of the police power, but merely to effect some purpose not within such power, arbitrarily interfere with a person or property right. The inevitable effect of this legislation is to build up one class and to deny the right to contract to the other.

In the opinion of *Frazer* v. *Shelton,* 320 Ill. 253, this court pertinently asked, "Does the business of accounting affect the public health, comfort, safety or welfare?" We said that unless it does its restriction is not permitted under the constitution. We declared that accountancy could not be placed in the same category as the practice of law, by reason of the latter's influence upon the safety of the rights of property and liberty, and that it was not analagous to the practice of medicine and surgery, which affects the public health.

We also stated that it will be readily seen that an incompetent accountant may render an inaccurate report and cause his employer to make a business error, but this would create no effect upon the public, unless the relationship existing between the public welfare and the private business

is so close as to establish that influence. The statute before us is so broad that it makes no distinction between the auditing of the financial affairs of businesses affected with a public interest and those which are not. The legislature has no power to restrict accountancy of a purely private business by imposing barriers upon the vocation which hinders and obstructs those now engaged in it or who may hereafter desire to pursue it.

Courts have already gone a long way in sanctioning legislation which has for its sole object the creation of a monopoly in vocations having no relation to the public health, good order or general welfare of the citizens. It is time for the courts to call a halt on such invasions against the privilege of engaging in lawful enterprise. There is no greater justification for a law regulating accountancy of purely private concerns than there would be for laws regulating milliners, dressmakers, rivet-catchers, job-printers, artists, sculptors, janitors, newspaper reporters, secretaries, stenographers, window-dressers or drain-layers.

Mr. CHIEF JUSTICE HERRICK concurs in this dissent.

Mr. JUSTICE FARTHING also concurring in the dissent:

Like Mr. Justice Dickey in *Purcell* v. *Parks*, 82 Ill. 346, I find that I must dissent from the majority of the court, although I prepared the opinion the majority adopted. If a precedent were needed to support the action of Mr. Justice Dickey it would be found in *Warren* v. *Nexsen*, 3 Scam. 38, where Mr. Justice Douglass reversed a judgment he had rendered as judge of the circuit court of Hancock county.

In spite of the unusual situation noted, I fully concur in the dissent for the reasons therein stated.