## The People of the State of Illinois ex rel. Otto F. Aken, Appellant, v. Noble J. Puffer, Appellee.

### Gen. No. 38,959.

Opin-
ion filed May 4, 1937.   Rehearing denied May 18, 1937.

THOMAS J. COURTNEY, State's Attorney, and OPAL LEON BUNN, of· Chicago, for appellant.

HARRIS F. WILLIAMS, of Chicago, for appellee; SYDNEY L. BLANKSTEIN, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

After leave granted, an information in the nature of *quo warranto* was filed. It charges that defendant, since December 1, 1934, has attempted to assume supreme authority over the office of county superintendent of schools of Cook county, Illinois; that he claims the right to enter upon the duties of that office on the first Monday in August, 1935, to execute its duties for the ensuing term and receive the salaries and benefits thereof; that the office was established under "An Act to Establish and Maintain a System of Free Schools," approved and in force June 12, 1909.

The information recites the death of the former superintendent of schools, Edward J. Tobin, and alleges that relator was appointed his successor, by the board of commissioners of Cook county, to serve for the remainder of the term for which Tobin was elected, and until relator's successor should be duly elected and qualified; that relator entered upon the duties of the office; that he is the exclusive holder of the right to hold the office; that he is entitled to the salaries and benefits thereof until his successor is duly elected and qualified; that such right is a personal, private, and an exclusive one, possessed by no other person, and distinct from the rights of the public at large; that relator has always been a person of good character within the meaning of the statutes; that he was in all respects qualified and eligible, within the meaning of the statutes, to hold the office and to continue to hold it until his successor is duly elected and qualified; that during all of the time relator has been the holder of the office he has properly performed all of the duties thereof provided by law; that defendant was not, at the time of the primary election held in Cook county on April 10, 1934, a person of good character within the meaning of section 5, chapter 122, of the statutes of this State, because of certain derelictions of duty and violations of rules and regulations of the office of county superintendent of schools; also because of violations of certain orders of the board of commissioners of Cook county, and also because of certain acts committed by defendant while he was acting as a director of education in the office of the county superintendent of schools of Cook county; that defendant was not eligible to be a candidate for the nomination to the office of county superintendent of schools at said primary election, was not eligible to have his name placed on the ballot as such candidate at the general election held on November 6, 1934, and was not eligible

to enter upon the duties of the office or to hold the office because he did not have four years' experience in teaching, as required by said section 5; that defendant usurps and intrudes into the office, performs duties and receives salaries and benefits thereof without warrant or right whatsoever, and the information prays process of law and to make defendant answer to the People "by what warrant, title or right he usurps, intrudes into and holds or claims to hold and execute the said office and the aforesaid rights of Relator," and that if defendant does not justify or disclaim, he be ousted and expelled from the office by the judgment of the court, "and that the respective rights of the defendant herein may be determined and adjudged."

In substance, defendant's pleas state that he did not usurp or claim any right to the office in question from December 1, 1934, to August 5, 1935; that on April 10, 1934, a primary election was held in Cook county for the nomination of candidates for various offices to be voted on at a general election to be held on November 6, 1934; that defendant submitted his name as a candidate, of the Democratic party, for the office of county superintendent of schools at that election and received the greater number of votes cast for the office, was declared nominated, and his name was placed on the official ballot as candidate of the Democratic party for the said office at the election held November 6, 1934; that defendant at that election received the greater number of votes cast for said office and was declared elected; that before entering upon the duties of the office he qualified by taking the oath of office prescribed by the constitution and executing the bond required by law; that he was duly commissioned by the governor of Illinois as county superintendent of schools of Cook county; that he took office on August 5, 1935, and still holds it; that when he filed his petition at the primary election, and when

he entered upon the duties of the office on August 5, 1935, he was a man of good character; that he has always been a man of good character; defendant denies that he has been guilty of any of the alleged derelictions of duty or violations of rules and regulations of the office, or violations of orders of the board of county commissioners, and avers that he has never been guilty of any of the alleged wrongful acts or misconduct as a director of education in the office of the county superintendent of schools of Cook county; that defendant, at the time of the primary election, held a valid county supervisory certificate and a State life supervisory certificate granted by the superintendent of public instruction, the latter certificate being in full force and effect when defendant entered upon the duties of the office; that at the time of the primary election and the general election and when he entered upon the duties of the office he had more than four years' experience in teaching, as required by section 5; that defendant did not usurp the office in question. The pleas set up in detail the facts pertaining to the primary election and the general election. Relator filed replications reaffirming the alleged usurpation.

Edward J. Tobin was elected to the office of county superintendent of schools of Cook county, Illinois, for the statutory term of four years commencing the first Monday in August, 1931. He died on March 2, 1933, and on March 20, 1933, relator, Otto F. Aken, was appointed, by the board of commissioners of Cook county, to fill the vacancy. On April 10, 1934, a primary election was held for the nomination of candidates for certain offices in Cook county, at which election the candidates on the Democratic ticket for the office of county superintendent of schools received the following votes: Noble J. Puffer (defendant), 263,761; William J. Cooney, 109,356; Otto F. Aken (relator), 46,981. At the general election held on November 6,

1934, the candidates for the same office received the following votes: Noble J. Puffer, 802,402; George A. Schwebel, 489,199; Elmer L. Kletzing, 2,566. On December 11, 1934, a commission, signed by the governor and the secretary of state, issued to defendant. The latter's oath of office and his official bond were filed with the county clerk of Cook county. Defendant is now serving his term of office.

The case was tried by the court, without a jury. When it was called for trial the State's attorney informed the court that he had no interest in the subject matter of the suit; that he signed the petition because he felt that if he refused to do so mandamus would lie; that the relator's personal counsel would represent relator, as the State's attorney felt that it was the relator's matter. The State's attorney was not represented during the trial nor in this court. When defendant concluded his evidence, the trial court denied a motion by relator for a judgment of ouster, and relator rested, without introducing any evidence.

The material parts of defendant's testimony are as follows: He is serving his term of office as county superintendent of schools of Cook county. He was born at Cameron, Illinois, May 5, 1901, and had lived in Cook county since August, 1924. In June, 1923, he graduated from Illinois Wesleyan University, at Bloomington, with the degree of Bachelor of Science, and since then has been engaged in educational work exclusively, either as a teacher or as a supervisor. Between his sophomore and junior years at the university he taught at the DeLong High School in Knox county, and also served as principal, for a time. In September, 1923, he became athletic director at the Hartsburg Community High School, and also taught mathematics and physics, for a period of nine months. He then went to Arlington Heights Township High School, where he taught algebra, geometry and gen-

eral science for the first year, and algebra and geometry for the second six months' period of the second year. He was also connected with the athletic work. In his second year at the Arlington Heights High School he was appointed assistant principal by the board of education. In March, 1926, he entered the office of the county superintendent of schools of Cook county as an assistant or director of education, or country life director, as it is sometimes called, and in that position he supervised teachers, directed courses of study to be prepared, instructed teachers, demonstrated teaching before classes of children in the various schools in the county, conferred with teachers upon the promotion of pupils, directed the giving of tests and gave tests to determine whether certain pupils in the eighth grade were eligible for promotion, conferred with boards of directors in regard to the selection and employment of teachers, planned and prepared eighth grade graduation exercises in the various township centers, awarded diplomas, performed the functions of a city or village superintendent of schools, and assisted teachers in preparing their annual reports, and boards of directors and teachers in the preparation of their blanks for the State distributive fund. He took graduate work in the field of supervision and administration at Northwestern University in the graduate school in the department of education and was awarded the degree of Master of Arts, in June, 1932. During his direct examination various exhibits pertaining to his nomination, election, commission and qualifications were introduced. *Defendant was not cross-examined.*

It is conceded that defendant was legally and fairly nominated and elected to the office in question, and this appeal presents an unusual *quo warranto* case. Counsel for relator stated in the trial court that the sole question in the case related to the eligibility of defend-

ant to be a candidate for the office, or to fill it if elected. Relator contended in the trial court, and contends here, that defendant was not eligible as a candidate for the office and "was not eligible to enter upon the duties of the office" because "he did not have four years' experience in teaching and for the reason that at those dates he was not a man of good character within the meaning of the Statute." Relator relies upon sec. 5, ch. 122, Ill. State Bar Stats. 1935, ¶ 5; Jones Ill. Stats. Ann. 123.005,—known as the "Schools" Act—which provides:

"No one shall be eligible to file his petition at any primary election for the nomination as candidate for the office of county superintendent of schools nor to enter upon the duties of such office, who is not of good character, actually engaged in educational work and who does not hold a valid county supervisory certificate or a State certificate granted by the Superintendent of Public Instruction and who has not had at least four years' experience in teaching."

Relator contends: The information charges usurpation of the office, defendant's pleas allege facts showing his purported right to exercise the office and conclude with a traverse under the *absque hoc,* plaintiff reaffirms the usurpation in his replications and joins in the traverse, and upon that state of the pleadings it was incumbent upon defendant to prove all of the facts alleged in his pleas, and he failed in that regard.

Relator argues that "the four years' experience in teaching required by section 5 . . . before a person is eligible to file his petition as a candidate for the nomination to office of County Superintendent of Schools means four years' experience in actual teaching as a teacher in schools where there exists the relationship of teacher and pupil" that "the four years' experience in teaching required . . . means four 'calendar' years of twelve months each"; that "teaching,

within the contemplation of the act is for the purpose of including teachers who come under the provisions of the Schools act." Relator concedes that defendant, at the time of the primary election, had 33½ months' experience in teaching, but contends that none of defendant's work since he entered the office of the county superintendent of schools, in March, 1926, can be considered in determining whether he had "at least four years' experience in teaching." Counsel for relator states that he has been unable to find a decision by any of the courts of this State that directly applies to the facts involved in the instant contention. In passing upon the instant contention the trial court said: "Educational work may mean more than merely experience in teaching. It may cover a wider field. . . . It doesn't mean he must have four years as a teacher . . . the Statute doesn't say that he must have been . . . an actual teacher for four years so long as he has experience in teaching for four years. A man may have experience in teaching by actually supervising the teaching work, directing what it should be, by watching that the directions are carried out and by watching how the teaching is being done. There is nothing in the Statute . . . that in order to qualify a man for the position, he actually have a school room and pupils and for four years be engaged in actual teaching of children or pupils personally. All it requires is four years' experience in teaching. How that experience is gained is not limited to his daily performance of duties as an instructor. . . . It is rather peculiar language the Legislature uses. If it meant that he should, in fact, have been for four years a teacher, it would have said so. . . . It said four years' experience in teaching. . . . And the work of teaching contemplates having schools; . . . having somebody in charge of that school, someone to lay out the work of the teachers and to see that the teach-

ers are there on time and to watch their work and see that they perform it properly. All those so engaged are having experience in teaching.'' The trial court held that in determining whether defendant had had four years' experience in teaching, his work and duties after he entered the office of the county superintendent of schools must be considered. The attorney general of this State, Otto Kerner, was for several years a member of this division of the Appellate Court. In June, 1935, the State superintendent of public instruction wrote him asking his opinion as to whether defendant had had at least four years' experience in teaching within the meaning of the statute. In view of the legal ability of the attorney general and the absence of any decision bearing upon the instant question by the courts of this State, we deem it appropriate to refer to the opinion he gave the superintendent. We quote from his letter:

''In reply I beg to advise that no court, so far as I can find, has passed upon this particular qualification, and it, therefore, becomes necessary to consider this as an original question.

''Mr. Puffer has had three years and six months of actual teaching, classroom work, and had he continued to do this work until the end of his fourth year, there could have been no question raised concerning his eligibility, provided he possessed all the other necessary requirements.

''However, instead of actual classroom teaching, after this three and one-half year period, he was promoted, as I understand it, to supervisory work in the public schools of Chicago. In other words, instead of teaching students in classroom work, he was instructing teachers in their duties, which incidentally included teaching students parts of two or three days per week.

"The statute requires 'four years' experience in teaching,' not 'four years' experience in classroom work' or 'four years' experience in teaching pupils attending schools.'

"I assume that if Mr. Puffer had taught four years in a Normal School, where among other things, teachers are taught how and what to teach, there would be no complaint. I can see little or no difference in that sort of teaching and the supervisory work done by him in the public schools of Cook County. His duties during that time included among other things, just such work as he will be called upon to perform as county superintendent of schools.

"    . . .

"The statute must be given a reasonable construction, and, in my opinion, any person who has taught in classrooms for three and one-half years and has performed satisfactory supervisory work over teachers for nearly eight years, which work included actual classroom teaching as well as instructing teachers in their work of instructing pupils, is amply qualified under the statute, provided he possesses all the other requirements thereof."

After a careful consideration of the instant contention we are satisfied that the trial court ruled correctly in refusing to sustain relator's position.

Defendant contends that section 5 should not be construed as requiring four *calendar* years' experience; that the statute contemplates four *school* years' experience and that defendant had more than four years' experience in teaching in certain designated schools within the meaning of the statute, independently of his work and duties as assistant county superintendent of schools for a period of more than seven years. Relator argues that if a school year covers only a period of eight months it would require six school years to comply with the provisions of section 5. While there

is considerable force in defendant's contention, we do not deem it necessary to pass upon it.

Defendant did not testify in respect to the alleged derelictions of duty, and relator, basing his argument upon that fact, contends that the good character of defendant cannot be presumed to exist; that the burden was upon him to prove his good character by competent evidence and that he failed to sustain the burden; that the evidence offered by defendant did not prove nor tend to prove good character and therefore the trial court erred in refusing to enter a judgment of ouster against him. In support of the contention relator cites *People ex rel. Odell v. Flaningam,* 347 Ill. 328. That case, in our opinion, is not applicable to the instant record. The information in the *Flaningam* case charged, *inter alia,* the commission of forgery by the defendant, and the latter, in his pleas, admitted the charge but averred that no wrong or injury was intended in the commission of the act. A demurrer to the pleas was sustained and Flaningam electing to stand by his pleas, a judgment of ouster and a fine was entered against him. In the instant case defendant denies, in his pleas, the charge that he was not of good character and avers that he was always a man of good character. He further denies that he has ever been guilty of any dereliction of duty or that he has ever violated any rules of the county board, as alleged in the information. There is no allegation in the information that the alleged "derelictions of duty" on the part of defendant were ever judicially or officially established, or that defendant was guilty of any offense which would work a forfeiture of the office.

Character, strictly speaking, is that which a person really is. Reputation is that which a person is thought to be, or is supposed to be, in the minds of others. A man of very good character might have a bad rep-

utation, and a man of good reputation might have a very evil character. Defendant had the right to prove that he was a man of good character by direct or circumstantial evidence. The trial court held that defendant made out a *prima facie* showing that he was a man of good character, independently of the rule of law that presumes that a man is of good character where there is no proof to the contrary, and we are satisfied that the trial court was fully justified in so holding. There was introduced in evidence by defendant the State life supervisory certificate issued on September 9, 1933, under authority of the statute, by the State superintendent of public instruction, which reads as follows:

"This is to Certify that Noble J. Puffer, having complied with the requirements of the law and the regulations prescribed by the Superintendent of Public Instruction and having furnished *satisfactory testimonials as to character,* preparation and successful teaching, has been awarded this State Life Supervisory Certificate, valid for supervision and teaching in any school district in the state during the good behavior of the holder." (Italics ours.)

*A fortiori,* relator, as county superintendent of schools, issued, on July 1, 1933, to his subordinate, the defendant, a Cook county supervisory *renewal* teacher's certificate, signed by relator, which reads as follows:

"The undersigned, having examined Noble J. Puffer in the subjects required by law, *and being satisfied that he is of good moral character,* hereby Certifies that his qualifications are such as to entitle him to this Certificate, which is valid in this County for One Year from the date hereof, unless sooner revoked, and is renewable at the option of the County Superintendent." (Italics ours.)

As bearing upon the charge made in the information that defendant was not a man of good character, it is significant that in his affidavit in support of the petition for leave to file the information relator states that the "derelictions of duty, violations of the rules and regulations of the office of County Superintendent of Schools" by defendant were committed on *March 4, 1933;* and in this connection we note that relator does not base his charges in the affidavit upon information and belief. March 4, 1933, was approximately four months before relator issued the certificate to defendant. During all of this period of time relator was the superior officer of defendant. This last mentioned certificate not only tends to prove that defendant was a man of good character, but it very seriously reflects upon the truth of the charge made in the information. Out of relator's own mouth came an answer to the charge. It is a familiar rule of law that good character once proved is presumed to continue, in the absence of countervailing evidence. (*United States v. Deans,* 230 Fed. 957, 959.) In *People v. Board of Pharmacy,* 275 Ill. 236, it was held that under the Pharmacy Act, when a certificate issued by the State board of pharmacy certifies that a pharmacist is of good moral character the presumption of good character continues until the contrary is made to appear. The nomination of defendant at the primary election and his election at the general election by overwhelming pluralities show very conclusively that the voters of the district judged him to be a man of good character. After the trial court advised relator that defendant had made out a *prima facie* showing that he was a man of good character, relator refused to offer evidence to prove the charge he had made, and he now seeks to have defendant ousted from the office to which he was legally elected by the people, upon technical rules of pleading not applicable to the instant case.

We must presume that the State's attorney would not have withdrawn from the case had he believed there was merit in the charge of alleged derelictions of duty, and that prosecutions would have followed the charge had the facts submitted by relator to that official warranted such action. It is a reasonable assumption that if there had been any basis for the charge in the information the State's attorney would not have withdrawn from the proceedings. If the charge was made in good faith and upon personal knowledge, why did not relator present proof to the trial court in support of it? He failed to do so, although the court reflected upon his conduct in that regard and charged him with deliberately attempting to usurp an office to which the people had elected defendant.

As we have heretofore stated, relator, as county superintendent of schools, had the power, under the statutes, to prefer charges against defendant for the alleged derelictions of duty, or to discharge him. If he knew that defendant had been guilty of serious derelictions of duty, his duty was plain. But he seems to have taken no action of any kind in the matter until the instant proceeding was commenced, on August 6, 1935, exactly nine months after the election. At the time the trial court found for defendant the latter had made out a *prima facie* showing as to his good character, and the charge of relator had been so discredited that, apparently, he considered it useless to offer evidence to sustain it. The introduction of the certificate he issued to defendant on July 1, 1933, completely answered the charge.

But there is a paramount reason why the purely technical contention of relator should not prevail. Neither the legality nor the fairness of the primary election or the general election is questioned. Relator concedes that defendant received an overwhelming plurality of votes at both elections. As we have hereto-

fore stated, the voters are presumed to have known that the law requires that a county superintendent of schools shall be a man of good character, and they have recorded their judgment that on the day of the primary election and on the day of the general election defendant was a man of good character. In view of the entire record in this case, what right has a court to set aside the judgment of the people twice recorded? We refuse to sustain the bold contention of relator that the result of the two elections does not even tend to prove that the defendant was a man of good character.

Defendant complains bitterly of the attitude of relator in the present proceeding. Undoubtedly, relator has taken with poor grace the election of defendant to an office which the former once held and still desires, and it is regrettable that after the decisive vote in the primary election that manifested an overwhelming preference of the voters of the district for defendant over relator, the latter did not see fit to abide by the will of the people.

We have not deemed it necessary to pass upon a contention of defendant that the allegations as to derelictions of duty in a former office by defendant do not make out a *prima facie* showing that he was not a man of good character at the time of the primary election and at the time of the general election.

The judgment of the circuit court of Cook county is a just one and it is affirmed.

*Judgment affirmed.*

JOHN J. SULLIVAN, P. J., and FRIEND, J., concur.